FOSTER v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

In Banc, March 25, 1893.

1. **Pleading:** CODE: NEGLIGENCE. Under the code a pleading should be liberally construed, and a general charge of negligence is sufficient after answer.

2. ———: ———: ———. A petition for damages for personal injuries discussed and *held* to sufficiently allege a causal connection between the negligence and plaintiff's damage.

3. **Negligence:** RAILROAD: INJURY TO EMPLOYE: QUESTION OF FACT. Plaintiff, under direction of defendant's roadmaster was one of a gang engaged in track work distributing railroad ties, etc., and, while attempting to board a construction train in response to an order of the roadmaster was hit by a heavy tie, thrown from the car by the men upon it; *held,* in the circumstances stated in the opinion, that there was evidence of negligent direction of the work; and that the question of plaintiff's negligence was one for the jury.

4. ———: ———: ———. The connection between the negligent order and plaintiff's injury discussed.

5. ———: ———: COMPLEX BUSINESS RULES. A master engaged in a complex business is bound to use ordinary care in directing its management whether by means of needful rules or through the orders of its managers, foremen, etc. The latter are not fellow-servants of employes under their orders in respect of the exercise by the former of their directing authority.

6. ———: ———: FELLOW-SERVANTS. Employes working together under one common directing superior are fellow-servants.

7. Practice: INSTRUCTION: HARMLESS ERROR. The trial court by instruction called for a finding of immaterial facts, in addition to the substantive facts essential to plaintiff's case; but that error is *held,*. harmless.

8. ———: EVIDENCE: HARMLESS ERROR. Where in answer to a question a witness states merely a fact already in evidence without objection and conceded throughout the trial the ruling on the question is harmless.

9. ———: ———. An objection is generally too late after evidence in fair response to a question unobjected to.

10. Verdict: PERSONAL INJURIES. A verdict for $10,000 for personal injuries, loss of time, etc., *held,* not to call for any revisory action on the part of the supreme court on the ground of excessiveness.

*Appeal from Johnson Circuit Court.*—HON. C. W. SLOAN, Judge.

AFFIRMED.

THE action is for damages for personal injuries. Plaintiff had a verdict and judgment for $10,000 from which defendant appealed.

The petition (omitting portions which are not in controversy) charges that "on the second day of June, 1890, plaintiff was in the employ of defendant as a section hand; and as such and in the line of his employment was engaged with others in unloading a train of defendant's cars at and near the town of Lamonte, in Pettis county, Missouri; that on the last named date one Pat Sheehan was in the employ of defendant as a division roadmaster and as such was by defendant placed in, and by virtue of his employment

Foster v. The Mo. Pac. Ry. Co.

had charge and control of, said train and of plaintiff and others unloading said train. That the said Pat Sheehan at that place while acting for and in behalf of said defendant as aforesaid on the said second day of June, before said train was entirely unloaded, when he knew or by the exercise of ordinary care could have known that the same was not unloaded, negligently, carelessly and recklessly ordered and directed said plaintiff to board said train, and that plaintiff believing said train to be unloaded and without fault or neglect on his part, and while engaged as aforesaid in the employment of defendant attempted in compliance with said order to board said train, and while so doing the said Pat Sheehan negligently, carelessly and recklessly permitted a railroad tie to be unloaded and thrown from said train and cars against and upon plaintiff, striking him with great force and violence and upon the back and spinal column paralyzing the left side of his body, permanently disabling him, rendering him unable to earn a livelihood and causing him great mental and physical pain and suffering; and that by reason of the premises and the negligence and carelessness of the defendant and its said roadmaster as herein stated directly contributing thereto, plaintiff while in the employ of defendant in manner aforesaid has been permanently injured and rendered unable to earn a livelihood."

The answer denies the allegations of the petition and sets up contributory negligence on plaintiff's part which is thereupon put in issue by the reply.

The appeal was heard in the second division and an opinion delivered in December, 1892, as follows:

"THOMAS, J.—This suit is for damages on account of injuries sustained by plaintiff while engaged in the service of the defendant. The basis of this claim as

set forth in the petition is, in substance, this: That while, as one of several section men, engaged in unloading a train of cars, the division roadmaster, before the train was unloaded, negligently gave an order to him to board the train, and that, as he was attempting obedience to the order, the roadmaster negligently permitted a railroad tie to be unloaded and thrown from the car, which struck the plaintiff with great force and seriously injured him. After a general denial, it was answered that plaintiff was injured through his own carelessness and that of his fellow employes.

"The evidence shows that three sets of section men, making in all sixteen or seventeen, and of whom plaintiff was one, were brought together at Lamonte for the purpose of unloading five or six cars of cinders and two of ties, to complete an extension of a passing track, just outside and west of the yards at that place. It was a work they were accustomed to do. An engine was attached to the cars, and drew them westwardly, distributing the cinders and ties along the route of the proposed track, stopping at intervals for this purpose. The cars loaded with cinders were next to the engine, and those with ties at the rear of the train, Some of the men were put to dumping the cinders, and others to throwing out the ties. The ties, which were in coal cars, the sides and ends of which were from three to three and one half feet high, were thrown out on the north side, ends first. After some of the cinders and ties had been unloaded, five or six of the men, among whom was the plaintiff, were sent by defendant's roadmaster, who had charge of the men and work at that time and place, to shovel the cinders off the rails and straighten out the unloaded ties left behind as the train moved forward in the distribution of these materials along the track. When plaintiff and his comrades had completed this work, they stood east of the hind

car of the train, which was then stationary, plaintiff being on the north side of the track, or between the rails of the track. The roadmaster was on the hind car, and asked plaintiff and the men with him if they were through, and, getting an affirmative answer, he gave the order 'All aboard!' in an imperative manner.

"At the point where the car then stood there was a fill, and the evidence tends to prove that on the south side there was quite a decline, beginning at the end of the ties on which the rails of the track rested, so that it was difficult in some degree to pass along that side towards the front of the train; and, on the other hand, there was evidence to the effect that there was space enough between the end of the ties and the beginning of the incline to enable one to comfortably pass. On the north side the ground was level, but the ties and cinders that had been unloaded made this route also difficult for passage according to some of the witnesses, but according to others they were so small in number and amount that part of the way was not obstructed to any great extent. When the order 'All aboard!' was given, four or five men stood between plaintiff and the end of the car. All made a rush to get aboard, the men nearest the car climbing up at the rear end, but plaintiff ran along the north side, intending to get on at the forward end, and when he had advanced a few feet the roadmaster called to him to look out. He dodged, but was too late, and a tie the men threw out according to some witneses struck him between the shoulders, and according to others struck the ground, rebounded, and struck him, knocking him down, and injuring him seriously. The roadmaster was on the car at the time he gave the order 'All aboard!' and knew that all the ties had not been unloaded. Men standing on the ground could not see the ties in the car, owing to the height of the side and end boards.

"Plaintiff and others testified that while they stood on the ground, just before the accident, they did not see the men in the car throwing out ties, and supposed when the order was given that the ties were all unloaded. It was customary for the men to get on at the end of cars of this kind; but sometimes they would get on at the sides. In this instance, owing to the heighth of the car,—it being eight to ten feet from the ground to the top of the sideboards,—it was almost impracticable to board it from either side, especially from the south side, where there was quite a steep grade, and there were no means of climbing up at the rear end, except by the drawhead, and but one man at a time could ascend at that point. At the forward end there were a breakbeam and another car in reach, besides the drawhead, to enable a person to board the car easily.

"There is no pretense that the men engaged in unloading the cars were guilty of negligence, as they could not see anyone on the ground at the side of the car while stooping down to handle the ties. At the time of the injury it was near noon, and the men all knew that the train they were with must be moved to get out of the way of a passenger train then nearly due, and from that fact, and from the tone and manner of the roadmaster in giving the order 'All aboard!' they supposed expedition on their part was required, and plaintiff started on a run.

"The court instructed the jury that if they found from the evidence that: Plaintiff was engaged as a laborer by defendant upon its road; that one Pat Sheehan was at that time employed by defendant to oversee the work being done by plaintiff, and that by virtue of his employment and position he had immediate control and direction of plaintiff and others engaged in work with plaintiff, and had power and authority to

direct and control plaintiff in his work; that in June, 1890, a load of ties was being unloaded from one of defendant's cars upon defendant's road, where plaintiff was at work, and that it was known to the said Sheehan and the other workmen to be dangerous for any one to attempt to board said car until all said ties had been unloaded; that plaintiff was in a place of safety while said ties were being unloaded, and that said Sheehan, acting by virtue of his employment by defendant, negligently and carelessly ordered plaintiff to board said car before all of said ties had been unloaded and before the danger from the ties being unloaded had passed, and that plaintiff had reason to believe and did believe that said ties were all unloaded, and that the danger of boarding said car had passed, and, under the circumstances, plaintiff in the exercise of ordinary care obeyed such order of Sheehan, and attempted to board said car, and while attempting a tie was thrown from said car and struck and injured plaintiff, and that such injury was solely the result of said Sheehan's negligent and careless order aforesaid, then you will find the issues for the plaintiff.

"On the part of defendant the court told the jury, in substance, that when plaintiff contracted to work for defendant as a section hand he contracted to have ordinary skill and information concerning the work he undertook to perform, and that, if a person of ordinary intelligence would have known of the danger of going along the car, he could not recover; that he assumed the ordinary risks of the service in which he engaged, including the negligence of his fellow-servants; that the men who unloaded the ties were his fellow-servants, and defendant was not liable for their negligence; that if the acts of the men were open to ordinary observation, and if the plaintiff by the exercise of ordinary care might have known of the fact of their throwing

off the ties, or if plaintiff was cautioned concerning the danger of being struck by the tie, and failed to heed such caution, he could not recover; and that the burden was on the plaintiff to prove to the satisfaction of the jury by a preponderance of the evidence every fact necessary for him to recover as set out in the instructions, and, if he had not done so, the verdict should be for defendant.

"Judgment for plaintiff and defendant appealed.

"The controlling question in the case is presented by the demurrer to the evidence interposed by defendant at the close of plaintiff's case and at the close of the whole case, which was by the court overruled. It is contended that the court as a matter of law ought to have held that plaintiff could not recover, because *first*, the defendant was not guilty of negligence directly causing the injury, and *second*, the plaintiff was guilty of contributory negligence.

"We cannot say that the roadmaster's order to board the car when the ties had not been unloaded, which fact he admits he knew at the time, was not a negligent act; and whether it was or not was properly left to the jury as a question of fact. It was customary to ascend such cars at either end. Four or five men were ahead of plaintiff at the rear end, at which point but one at a time could ascend. Ascent at the forward end was easy. The route on the south side was uneven and difficult of passage. Another train was about due. The order 'All aboard!' was given in a peremptory manner, demanding prompt and immediate obedience, as plaintiff and the other men understood it, and from that order and the other circumstances plaintiff and his comrades supposed the ties were all unloaded, and we cannot, without an evident usurpation of the province of the jury, declare as a matter of law that plaintiff, in his effort to obey the order of his superior, was guilty

of negligence in attempting to reach the forward end of the car, or in taking the route north instead of that south of the car.

"The instructions of the court put the case in all its phases to the jury as favorably for defendant as the law warranted, and in that respect it has no just cause of complaint. The judgment will be affirmed. All concur."

After announcement of the foregoing opinion, defendant filed a motion for rehearing which was overruled by a majority of the divisional judges; but, owing to the dissent of the presiding judge, the cause was transferred to the court *in banc,* where it has been reargued.

The other necessary facts appear in the opinion of the court *in banc.*

*H. S. Priest* for appellant.

(1) The objection to the introduction of testimony and the motion in arrest of judgment should have been sustained. *First.* Because the petition shows no causal relation between the order which is charged as having been given negligently and the injuries which the plaintiff sustained. *Second.* Because it does not appear from the petition that the order was negligently given. *Sauer v. Union Oil Mill,* 9 South. Rep. 56; *Stephens v. Railroad,* 86 Mo. 221; s. c., 96 Mo. 208; Wood on Master & Servant, p. 100; *Schroeder v. Railroad,* 18 S. W. Rep. 1094; *Nolan v. Shikle,* 69 Mo. 336; s. c., 3 Mo. App. 300. (2) The demurrers to the evidence should have been sustained, because it is not shown that the order "All aboard" was negligently given, or that the plaintiff's injuries were the necessary or natural result of such order, and because it affirmatively appears from the testimony that plaintiff's injuries were

induced either by his own heedlessness and inattention or the carelessness of those immediately engaged in throwing out the tie.    16 American & English Encyclopedia, 436, Title Negligence; *Harvey v. Railroad*, 76 Mo. 288; *Hudson v. Railroad*, 101 Mo. 13; *Sauer v. Oil Co.*, 9 South. Rep. 566.    (3) Instruction number 1 given for the plaintiff is erroneous.    It is with reference to the facts of this case purely an abstraction.    It allows a recovery if the plaintiff believed that the cars were unloaded and the danger past, thus making him the standard of a reasonably prudent man.    (4) The court erred in allowing the two questions set forth in the statement to be propounded and answered over the defendant's objection.    The answer to the first of these questions should have been left to the jury to answer from the facts and circumstances; and the answer to the second was a substitution of the witness' opinion for that of the jury.    *Maxcy v. White*, 64 Mo. 552; *Rutledge v. Railroad*, 19 S. W. Rep. 38.

*S. G. Kelly* and *O. L. Houts* for respondent.

(1) Petition charged that plaintiff, a laborer, without fault on his part, was injured by the negligence of defendant's roadmaster or vice-principal in ordering plaintiff into a place which the roadmaster knew, or ought to have known, was, owing to the circumstances, extra hazardous.    It stated a cause of action and appellant's objection to the introduction of any evidence thereunder was properly overruled.    *Cox v. Granite Co.*, 39 Mo. App. 424; *Stephens v. Railroad*, 96 Mo. 207; 86 Mo. 221; *Keegan v. Kavanaugh*, 62 Mo. 230; *Schroeder v. Railroad*, 18 S. W. Rep. 1094; *Dayharsh v. Railroad*, 103 Mo. 570; *Shortel v. City of St. Joseph*, 104 Mo. 114; *Herriman v. Railroad*, 27 Mo. App. 435.    (2) Petition stated the substantive facts in the

case.   Plaintiff was not required to detail the circumstances attending the injury to plead his evidence. Revised Statutes, 1889, secs. 2055, 2060; *Alcorn v. Railroad*, 18 S. W. Rep. 188.   (3) Appellant for the first time questioned the sufficiency of the petition by an objection to the introduction of any evidence after answer and reply had been filed and trial commenced. As against that objection and after verdict the petition is undoubtedly good.   *Young v. Iron Co.*, 103 Mo. 324; *Johnson v. Railroad*, 96 Mo. 340; *Sullivan v. Railroad*, 97 Mo. 113.   (4) Sheehan was defendant's vice-principal, and it was unnecessary to prove he had a right to hire and discharge the hands.   See authorities cited under first proposition; also *Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 87 Mo. 285; *Hoke v. Railroad*, 88 Mo. 360; *Tabler v. Railroad*, 93 Mo. 79. Defendant gave Sheehan supervision and control over plaintiff, and that made Sheehan a vice-principal. *Sherrin v. Railroad*, 103 Mo. 378.   (5) The finding of the jury on the question of contributory negligence is also conclusive upon defendant under the evidence and upon the demurrer.   Plaintiff could not be non-suited on the ground of contributory negligence unless an unavoidable inference of negligence arose from evidence offered by him.   *Keim v. Railroad*, 90 Mo. 314. Presumption of due care always obtains in favor of plaintiff in an action to recover damages for injury sustained by him through the negligence of another. *Schlereth v. Railroad*, 19 S. W. Rep. 1134; *Petty v. Railroad*, 88 Mo. 320; *Parsons v. Railroad*, 94 Mo. 286. (6) Even if plaintiff's injuries had been caused by the negligence of Sheehan and the fellow-servants, defendant would still be liable.   *Young v. Iron Co.*, 103 Mo. 324.   (7) Sheehan's negligence was the proximate cause of the injury.   It is sufficient that the injury is the natural though not the necessary or inevitable

result of the negligence. *Miller v. Railroad*, 90 Mo. 389. (8) The consequence of Sheehan's negligence need not have been foreseen by him. He may have been surprised by the consequences, and doubtless was. Bishop on Non-Contract Law, sec. 457; Wharton on Negligence, secs. 73, 77. (9) Plaintiff's instruction number 1 is correct. It was examined, approved and commended by Judge .Rombauer in a case on all fours with this one. *Cox v. Granite Co.*, 39 Mo. App. 424. It imposes a greater burden of proof on plaintiff than the instructions approved in the *Stephens Case* and in the *Keegan Case*. *Stephens v. Railroad*, 96 Mo. 211; *Keegan v. Kavanaugh*, 62 Mo. 233. The damages under the evidence were not excessive. Question as to amount of damages is always and eminently a question for the jury. "Whenever the verdict does not on its face appear to be the result of passion or prejudice, it is wholly within the province of the jury." *Gurley v. Railroad*, 104 Mo. 211; *Waldhier v. Railroad*, 87 Mo. 37; *Furnish v. Railroad*, 102 Mo. 438; *Whalen v. Railroad*, 60 Mo. 323; *Pry v. Railroad*, 73 Mo. 123. (10) This is not a close case on the evidence. Taking into account all the evidence, it is clear that Sheehan was guilty of inexcusable negligence, and that his negligence subjected plaintiff to an extra and wholly unnecessary hazard, and caused his injury. The judgment therefore should be affirmed. *Barry v. Railroad*, 98 Mo. 62.

BARCLAY, J.—We entirely approve the rulings in the cause while in the second division, but deem it proper in view of the earnestness of counsel in pressing upon our attention certain points not heretofore discussed to add some observations.

1. It is urged that the petition is fatally defective, and that the motion in arrest should have been sus-

tained, for that no causal connection is alleged between
the negligent order and the injuries sustained by the
plaintiff.

The material parts of the petition are quoted in the
statement accompanying this opinion.    No objection
was made to their sufficiency until the trial, and then
but the general one that the petition failed to state
facts sufficient to constitute a cause of action.

Under the Missouri code of practice "in the con-
struction of a pleading for the purpose of determining
its effect, its allegations shall be liberally construed.
Revised Statutes, 1889, sec. 2074.    Moreover, gener-
ality in a charge of negligence is not a fatal objection
to it after answer.

But it seems scarcely necessary to apply either of
these propositions here.    The allegations before us are
so plainly intended to import that the negligent order
of the roadmaster was the immediate cause of plaintiff's
injury, that any lengthy discussion of them is unnec-
essary.

2. Defendant further contends that the evidence
fails to establish any proximate connection between the
order and the injury, and that the demurrer to the evi-
dence should, hence, have been sustained.

Assuming that the order should be treated as that
of the defendant (a subject to be considered further
on), did the evidence fairly tend to prove a causal con-
nection?    That is the full scope of our present inquiry,
for the jury found upon the issue of fact that plaintiff's
injury "was solely the result of said Sheehan's negli-
gent and careless order," and now we need merely to
ascertain whether that finding has substantial support
in the testimony.

It was in proof that Sheehan knew that the car
was not yet unloaded of ties, and that he knew it was

customary for men to mount the cars from the ground "most anywhere," as he testified. With this knowledge, and observing plaintiff's position on the north side of the track, eight or ten feet east of the end of the car he gave a sudden and imperative order, "*All aboard!*" in a manner and at a time which reasonably suggested that the train was about to move. In obedience to that order plaintiff ran along the north side of the track to board the car at the west end, and while so doing was struck in the back by a heavy railroad tie projected over the sides of the car by employes who were also under the immediate direction of the same foreman.

Three or four other workmen were standing near plaintiff when the order was given. The others were nearer to the rear platform than he, and the available space there would not allow of plaintiff's getting on immediately at that part of the car with them. Hence he started toward the other end, with the result indicated. The sideboards were three or four feet (according to different witnesses) above the level of the car. Plaintiff and others testified that from his position on the ground one could not see the ties that were being unloaded. Plaintiff declared positively that he believed that they had all been thrown out when the order was spoken. As the cars were at that spot to distribute these ties it was not an unreasonable inference that they had been unloaded when the foreman called plaintiff and the other men (previously engaged upon a different part of the work) to come aboard.

In several instructions for defendant the court submitted in various forms the question of plaintiff's exercise of reasonable care in the circumstances, and the verdict must be taken as a finding that he was not guilty of any want of such care. That conclusion is fully supported by the proof.

As persons are legally chargeable with the natural and probable consequences of their acts, we consider that it was obviously proper, upon the evidence above outlined, to submit to the triers of fact the issue whether the foreman's order, as and when given, was or was not characterized by a want of ordinary and reasonable care for the safety of the plaintiff, and whether or not, if negligent, the order was the immediate cause of his injury.

3. Defendant next questions the correctness of the instruction for plaintiff, in that it charges defendant with liability for the negligent order of Sheehan without requiring a finding that the latter had power to hire and discharge men. On that point the instruction simply calls for findings that "Sheehan by virtue of his employment and position had immediate control and direction of plaintiff and others engaged in work with plaintiff, and had power and authority to direct and control plaintiff in his work."

Defendant's contention is that the master should not be held answerable for negligent directions unless the managing employe is intrusted with the authority to hire and discharge and thereby to enforce obedience to his orders. But that contention ignores the principle on which the master's liability in such circumstances rests.

It is part of his personal duty to direct the work he has in hand, and, where it is complex (as that of railroading), to provide and enforce reasonable and necessary regulations of the labor engaged therein. Thus the want of a reasonably sufficient "system" for carrying on a large enterprise (Smith v. Baker (1891), L. R. App. Cas. 325), or of needful rules for its management (Reagan v. Railroad (1887), 93 Mo. 348; 6 S. W. Rep. 371; Abel, Ex'x, v. President, etc. (1891), 128 N. Y. 662; 28 N. E. Rep. 663) has been held

to form a basis for liability where injury to one servant, by the act of his fellow, resulted from such negligent omission of duty by the employer.

But the master's function of directing a large enterprise must of necessity be entrusted, as to many details, to subordinate employes. In exerting that function they perform the master's part, and for their action (within the scope of that delegated authority, and as to those placed under their orders) the master is responsible whether the superintending employe has or has not power to hire and discharge, and whatever may be the title by which he is designated. *Miller v. Railroad* (1892), 109 Mo. 350.

We regard the instruction as free of error in this particular.

4. Nor did the court err in ruling upon the instruction for a non-suit in respect to the question of common employment. The court, in one of defendant's instructions, told the jury that "the workmen on the car, pitching ties therefrom, were fellow-servants of plaintiff," and that defendant was not liable to plaintiff for negligence or carelessness on their part. This was without doubt correct, for these employes were all working together under one common directing superior. But that superior was not the fellow-servant of his subordinates, in so far as, and while he exercised the authority to direct them in their labor, as has been settled by many unanimous judgments of which but a few need be cited. *Russ v. Railroad* (1892), 112 Mo. 45; 18 L. R. A. 823; *Stephens v. Railroad* (1888), 96 Mo. 207; *Dowling v. Allen* (1881), 74 Mo. 14.

5. Defendant then objects to the plaintiff's instruction because it calls for a finding "that it was known to the said Sheehan and the other workmen to be dangerous for anyone to attempt to board said car until all said ties had been unloaded." The objection

is that the knowledge of the other workmen is immaterial and should not have been brought into prominence as a factor in the controversy. This may be conceded, yet it does not follow that defendant was prejudiced by the introduction of the words, "and the other workmen," into the instruction. That fact was not outside the evidence, was entirely harmless; and, moreover, error can not, generally, be predicated on the action of the trial judge in calling for a finding by instruction upon some immaterial fact, where the substantive facts essential to plaintiff's case are duly submitted and found. Such an error should be disregarded when (as here) it plainly appears to have had no prejudicial bearing upon the substantial rights of the adverse party upon the merits of the case. Revised Statutes, 1889, secs. 2100, 2303.

6. The same remarks dispose of another objection to the instruction for that it called for a finding that "plaintiff had reason to believe and did believe that said ties were all unloaded and that the danger of boarding said car had passed." There was direct testimony of that belief by plaintiff and it had an important bearing on the issue of his contributory negligence. *Alcorn's case* (1891), 108 Mo. 104. But it was not a fact essential to create a liability for negligence on defendant's part in the premises, and the reference to it might have been eliminated without impairing the force or effect of the instruction so far as it bore upon the latter issue. The instruction merely required the jury to find unnecessarily that additional fact to warrant the conclusion that defendant was negligent.

7. Error is also assigned upon rulings in admitting testimony, viz:

*First.* Upon plaintiff's redirect examination, the following:

"*Q.* When you started to get on the car, you told Mr. Logan you started on the run? *A.* I did.

"*Q.* You supposed the ties were all unloaded? (The defendant objected to what he supposed.)

"*Q.* What if anything led you to believe those cars were unloaded at that time? (The defendant objected to what he believed. The court overruled the objection; to which action of the court the defendant then and there excepted and saved its exception at the time.) *A.* Because Mr. Sheehan had hallooed 'all aboard!'"

It will be noticed that the question did not ask for plaintiff's belief, but what caused it; and that his reply merely stated a fact already in evidence without objection, and afterwards testified to by several others. Plaintiff, on his cross-examination, had stated (in answer to a question by defendant's counsel) that he "supposed the ties were all out of the car;" and there was no impropriety in asking him what led to that belief. But the answer was harmless, view the question as we may, for it elicited merely the repetition of a fact substantially conceded throughout the trial, and abundantly proven by many witnessess.

*Second.* The second ruling is thus shown by the record, viz:

"*Q.* Tell the jury whether or not it was possible for a man, in the position in which you saw Foster at the time he staggered, to have seen the tie—to have seen whether or not the ties were unloaded? *A.* No, sir. (The defendant objected as incompetent, irrelevant and immaterial. The court overruled the objection; to which action of the court the defendant then and there at the time excepted and saved its exception at the time.)"

All that need be said of this point is that it comes within reach of the principle declared by this court in

the ruling that, where a party "had an opportunity to interpose an objection, he cannot take the chances that the testimony will be favorable to him and, when it turns out otherwise, raise his objection, but must be held to have waived it." *Maxwell v. Railroad* (1884), 85 Mo. 106.

8. Finally, the amount of the verdict is said to be excessive, and for that reason a reversal is asked. That plaintiff was seriously hurt is established by overwhelming and undisputed evidence. The jury found $10,000 to be the reasonable value of his pain, loss of time, etc., and permanent disability to labor; and the trial judge, who saw plaintiff and heard his witnesses face to face, has approved that verdict.

At the moment when plaintiff was struck on the back by the tie he was knocked to the ground and remained unconscious for some time. He was removed soon after to defendant's hospital at Kansas City. He was examined by several experts, among them by Dr. W. P. King, an eminent physician and surgeon of defendant's medical staff. He testified that plaintiff was "suffering from almost complete motor and sensory paralysis of the left side," caused by the breaking of a small blood vessel in the brain, that he regarded plaintiff's chances for improvement very good, but not for his complete restoration to as healthy a condition as he was in before.

The entire testimony in the case coincided to the effect that plaintiff was afflicted with paralysis of the left side as described by Dr. King.

Plaintiff asserted that he was sound and well before this mishap; that it had totally deprived him of the use of his left arm, and, to a great extent, of the use of his left leg; the former he is unable to raise without catching hold of it with his other hand; that the left side of his tongue is thick and heavy, and his

speech impaired; that he suffers with pain in his left lung in bad weather, and from incontinence of urine, all in consequence of the accident. He has been unable to resume his former manual labor on account of the paralysis.

Two physicians, Dr. J. P. Walker and Dr. C. M. Decker, who were witnesses for plaintiff, declared that his injury was permanent, giving their reasons for that opinion.

In view of the nature and extent of his damage, we are all of the opinion that the amount of the verdict does not call for any revisory action by this court, without referring to any other proposition that may be considered by any of us applicable to this branch of the case.

The judgment is affirmed, BLACK, C. J., BRACE, GANTT, MACFARLANE, SHERWOOD and BURGESS, JJ., concurring.