# CHARLESTON.

HANEY v. PITTSBURGH, C., C. & ST. L. R'Y CO.

Submitted September 9, 1893.—Decided December 6, 1893.

1. DAMAGES—RAILROAD COMPANIES—CONTRIBUTORY NEGLIGENCE.

Where a collision is caused by the negligence of the conductor in failing to notice the signals displayed at a station, or by the negligence of the operator at the station in displaying improper signals, and by reason thereof a car collides with another standing on the track, where it had a right to be, with forty or fifty of the railroad section hands on board, and one of them jumps from the car to the ground to avoid the effects of the collision, and in

so doing receives an injury which results in his death, he can not be considered guilty of contributory negligence; and the company is liable for the damages thus sustained.

2. DAMAGES—CONDUCTOR—FELLOW SERVANTS.

· Neither the conductor of the train nor the operator at the station can be regarded as fellow servants of said section hand.

3. DAMAGES—CONDUCTOR.

A conductor having the entire control and management of a railway train occupies a very different position from the brakeman, the porters, and other subordinates employed. He is in fact, and should be treated as, the vice principal of the corporation, for whose negligence it is responsible to subordinate servants.

4. DAMAGES—CONTRIBUTORY NEGLIGENCE.

If one is placed by the negligence of another in such a position that he is compelled to choose instantly, in the face of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence placed in such a position might make, the fact that, if he had chosen the other hazard, he would have escaped injury, is of no importance in determining whether he was guilty of contributory negligence or not.

T. P. SPENCER for defendant in error cited 14 Ohio St. 372; 7 Ohio St. 317; 32 O. S. 96; 37 O. S. 665; 5 N. Y. 492; 18 N. Y. 432; 17 Wall. 559; 37 W. Va. 260, and a very recent case of *B. & O. R. R. Co.* v. *Baugh in U. S. Court.*

H. C. HERVEY for defendant in error.

I.—*Rules of R. R. Co. as evidence.*—30 W. Va. 798.

II.—*Fellow servant*—28 W. Va. 610; 36 W. Va. 397.

III.—*Evidence not prejudicial no cause for reversal.*—33 W. Va. 30; 33 W. Va. 71; 11 W. Va. 104; 21 W. Va. 764; 31 W. Va. 842; 26 W. Va. 143.

IV.—*Contributory negligence.*—27 W. Va. 47; 85 Va. 306; Beach Cont. Neg. 42; 83 Ga. 67.

V.—*Damages.*—34 W. Va. 260; Code, c. 103, s. 6; 13 S. E. Rep. 452; 76 Va. 137.

VI.—*Duty of R. R. Co. as to rules.*—124 N. Y. 493; 123 N. Y. 280; 126 N. Y. 544; 128 N. Y. 662. *Court will not invade province of jury.*—25 W. Va. 570; 17 W. Va. 214; 21 W. Va. 224; 26 W. Va. 338; 21 W. Va. 741.

VII.—*Exceptions not properly taken.*—31 W. Va. 363; 14 W. Va. 157; 26 W. Va. 49; 26 W. Va. 718; 16 W. Va.

522; 31 W. Va. 450; Code, c. 131, s. 9; 16 S. E. Rep. 819; 17 S. E. Rep. 794.

ENGLISH, PRESIDENT.

Gregory Haney, who was employed as a section-hand by the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, on the 14th day of January, 1892, was with some thirty or forty other hands, who were in the employ of the same company, on board of a construction train on the railroad of said company at or near Collier's station, in the county of Brooke and state of West Virginia, when another train of cars, which was an extra coal-train, and known as "No. 6," ran into the block in which said first named train was located at a speed of from twelve to fifteen miles per hour, and collided with said first-named train, which is called "No. 3." About the time the collision occurred, several of the workmen jumped from the caboose of No. 3 to the ground, in order to avoid the effects of the collision, and among them was said Gregory Haney, who in some manner, which is not clearly apparent from the evidence, sustained an injury which resulted in a compound fracture of his leg. The presumption is that it was caused by jumping from the cars, as the evidence shows that the doors of the caboose were wide open, that said Haney was in the caboose immediately before the collision, and he was found, with his leg broken, on the ground near the side of the train immediately after the collision. This injury occurred on the 14th day of January, 1892, and, on the 24th day of February following, said Gregory Haney died from lockjaw, which the physician says was induced by several causes. One was the injury; another was an exceedingly excitable and nervous temperament, and rheumatism.

On the 30th day of August, 1892, Eleanor Haney, who had qualified as administratrix of said Gregory Haney, deceased, brought an action of trespass on the case in the Circuit Court of Brooke county against said railway company, laying the damage at ten thousand dollars, for damage sustained by reason of the death of the said Gregory Haney. The plea of not guilty was interposed, issue was joined thereon, the evidence adduced, certain instructions

were asked by both plaintiff and defendant, and the case was submitted to a jury, which resulted in a verdict for the plaintiff of four thousand five hundred dollars; and thereupon the defendant, by its attorneys, moved the court to set aside the verdict, and grant it a new trial, because the same was contrary to the law and the evidence, and the damages found by the jury were excessive; which motion was overruled by the court, and a judgment was rendered on the verdict; and the defendant, by its counsel, excepted, and tendered its bill of exceptions, which was made a part of the record; and from this ruling and judgment of the court this writ of error was obtained.

The first error assigned and relied on by the plaintiff in error is as to the action of the court in allowing rule thirty four, printed on the time card, to be read in evidence to the jury, which rule reads as follows: "Each train running after sunset, or when obscured by fog or other cause, must display the headlight in front, and two or more red lights in the rear. Yard engines must display two green lights instead of red, except when provided with a headlight on both front and rear."

Now, in order that railroads may conduct the running of their trains safely and systematically, it is not only necessary that they should adopt rules for the governance of their employes, but, when so adopted and found to be salutary in their effect, they should be adhered to, and the negligence of their employes who have notice of these rules is frequently determined by their willful neglect and disobedience of the same. As to the relevancy of this particular rule, however, which was offered in evidence and objected to, the evidence shows that the accident which resulted in the injury complained of occurred very early in the morning, and also that the morning was foggy; so that the rule was relevant, as showing what was required to be done by the defendant in running its trains at such a time in the morning, and in weather of that character.; and I can not see that the defendant was prejudiced by the introduction of a rule which had been adopted by it manifestly for the protection of its property and the lives of its employes.

It is also assigned as error that the court permitted rules

Nos. 3 and 4 to be read to the jury, although objected to by the defendant, which rules are as follows:

"(3) The head of each department must be conversant with the rules, supply copies of them to his subordinates, see that they are understood, enforce obedience to them, and report to the proper officer all violations and the actions taken thereon.

"(4) Every employé whose duties are in any way prescribed by these rules must always have a copy of them at hand when on duty, and must be conversant with every rule. He must render all the assistance in his power in carrying them out, and immediately report any infringement of them to the head of the department."

The action of the court in allowing rule 224 to be introduced and read to the jury, against the objection of defendant, is also assigned as error, which rule is as follows:

"Freight conductors report to, and receive their instructions from, the train master, and must obey the orders of yard masters. The conductor is responsible for the movement, safety, and proper care of his train, and for the vigilance and conduct of the men employed thereon, and must report any misconduct or neglect of duty."

It seems to me that no valid objection could be sustained to the introduction of these rules. The question is directly raised in the case as to whether the defendant was guilty of negligence in the management of its trains, and, in determining that question, the first question which presents itself is as to whether the officers to whom it has intrusted the management of the trains have complied with the rules prescribed for their governance by the defendant itself. It is thus we ascertain what said officers are required to do by the directors of the railroad, and, by comparing their conduct as shown by the testimony, we can ascertain whether they have complied with their prescribed duties, or have been negligent in their conduct, and thereby have endangered or destroyed the property and lives of others; and I see no error in allowing said rules to be read to the jury. See *Madden's Adm'r* v. *Railway Co.*, 28 W. Va. 610, fourth point of syllabus, where it was held by this Court that "it is the duty of a railroad company to establish

proper rules and regulations for its service, and, having adopted such rules, to conform to them."

The next error assigned is as to the action of the court in giving to the jury the instruction numbered 1 on behalf of the plaintiff, for the reason that there was no evidence in the case tending to justify the giving of the same. Said instruction No. 1 is as follows :

"Plaintiff's instruction No. 1. If the jury believe from the evidence that Gregory Haney, while in the employ of the defendant company, was lawfully on a work train of the defendant, and that while on said train he was injured by a collision caused by the negligence of the conductor of the extra train attached to engine No. 6, said Gregory Haney being wholly without fault, or the means of preventing such negligence, or of avoiding its consequences, then the jury are instructed that the said conductor was not the fellow servant of said Haney, within the rule which exempts the company from liability for the negligent acts of fellow servants or persons engaged in the common service, and the company should be held responsible for an injury to said Haney caused by the negligence of said conductor."

This instruction, as we understand it, propounds the law as laid down by this Court in the case of *Madden's Adm'r v. Railway Co.*, 28 W. Va. 610, point 5 of syllabus, and also in the case of *Daniel* v. *Railway Co.*, 36 W. Va. 397 (15 S. E. Rep. 162) point 1 of syllabus. As to the objection that there is no evidence in the case tending to justify the giving of the same, there surely is evidence showing that the plaintiff's decedent was in the employ of the defendant company, and that he was on said train No. 3 as a laborer, being transported to the place of his work in company with the road foreman. As to the conduct of the conductor on that occasion, in his own testimony, when asked in question 14, "When you passed the distance signal at C. O. tower, what did that signal indicate to your train?" answered, "It was partly down ; it indicated notice to engineer to reduce speed immediately ; to approach home signal under control ; that the speed was reduced ;" but, when asked to state if his train approached home signal under

perfect control, answered, "Well, I can't just exactly say."
When asked, "What was the position of the arm on the
home semaphore signal when you approached?" replied,
"I don't remember exactly;" and, when asked to state if he
observed it at the time, answered he did not remember the
position of the block; "I can't answer;" and to the ques-
tion, "Under the rules of the company, state whether or
not it was your duty as a conductor to observe the signals,"
replied. "Yes sir." This testimony of the conductor him-
self would surely have a tendency to show negligence on
the part of the conductor of No. 6, and, as we think, would
warrant the instruction.

Instruction No. 3 was given at the instance of the plain-
tiff, and the action of the court in giving said instruction is
also assigned as error by the plaintiff in error for the same
reason. Said instruction No. 3 reads as follows : "If the
jury believe from the evidence that Gregory Haney, while
in the employ of the defendant company, was lawfully on a
work train of the defendant, and that while on said train
he was injured by a collision caused by the negligence of
the operators in M. N. tower or C. O. tower, or either of
them, failing to give the proper signals to engine No. 6,
said Gergory Haney being wholly without fault, or the
means of preventing such negligence, or of avoiding its
consequences, then the jury are instructed that said Haney
was not the fellow servant of said operators, or. either of
them, within the rule which exempts the company from
liability for negligent acts of fellow servants or persons
engaged in the common service, and the company should
be held responsible for an injury to said Haney caused by
the negligence of said operators, or either of them " Now,
it is well known that the operators at the station who con-
trol the signals in this manner control the movement of the
trains, and indicate the speed at which they are allowed to
move on to the next block, and indicate whether the way
is obstructed by another train or not; in short, these opera-
tors control the action of the conductors and engineers
who manipulate the moving trains. The evidence clearly
shows that by neglecting his duty, and violating the rules
of the company, the operator exposed the wrong signal to

No. 6 when it was approaching; and even if the conductor had been attending to his duties, and noticed the position of the signal, he would have been misled by the carelessness and negligence of the operator. And I think these instructions propound the law properly, unless, indeed, the said Gregory Haney was guilty of contributory negligence, and provided, further, that the negligence of the defendant was the proximate cause of the injury. The instruction, however, recites that the said Haney was wholly without fault, or the means of preventing such negligence, which would negative the evidence of contributory negligence; and the instructions also contemplate the injury as being the direct result of the negligence stated, so that I see no valid objection to them.

The action of the court in overruling the motion made by the defendant to set aside the verdict, and award it a new trial, is next assigned as error. Upon this question, in the case of *Miller* v. *Insurance Co.*, 12 W. Va. 116, this Court held that a new trial asked on the ground that the verdict is contrary to the evidence ought to be granted only in a case of plain deviation from right and justice; not in a doubtful case, merely because the court, if on the jury, would have given a different verdict. Can we say that this was such a case? The accident was such as is termed among railroad men a "rear-end collision." Train No. 3, with forty or fifty laborers in its caboose, on their way to their respective places of labor, had just pulled into the block at Collier's station, and was standing on the track, and the conductor of No. 3 had started his flagman back to ward off danger. He had proceeded about one hundred yards when he met train No. 6, coming in at a rate of speed of twelve or fifteen miles an hour. The evidence shows that No. 3 passed No. 6, at the west end of Collier's yard, about two miles from where the collision occurred; so that the conductor of No. 6, if he paid any attention to what was transpiring, could not fail to know that No. 3 was going east in front of him, and, although he must have been aware that No. 3 was ahead of him, he followed so closely after it, at a high rate of speed, that No. 3 had not been stopped more than a minute when the col-

73

lision occurred, and, according to his own statements in his testimony, he was so careless and negligent in regard to the character of the signals displayed that, when asked upon trial what they indicated when he approached the home semaphore signal, he was compelled to admit that he did not remember exactly, and, when asked if he observed the signal at the time, answered that he did not remember the position of the block, and could not answer. Yet this was the man who under the rules adopted by the company for the government of its employes, had the control and management of the movements of said train No. 6.

It is true that, if he had noticed the signal, he would have been misled by reason of the negligence on the part of the operator in exhibiting a signal which indicated a permission to train No. 6 to come into the block at a high rate of speed, and without any notice that the track was occupied; but on the contrary, said operator had left the signal at such an angle as to indicate a clear track, and, with the signals indicating a clear track, the operator left his office, in violation of rule No. 204 adopted by said company.

It is also shown that the road between the two towers M. N. and C. O. is a block; and one of the rules of the company provides that, when a train approaches a block station white will be displayed if there is no train upon the block ahead; and rule No. 202 says white indicates that the block is clear, and gives permission to proceed. In this instance the operator at M. N. tower gave the white signal to train No. 6 when No. 3 was still on the block. It is clear, then, that both the conductor of train No. 6 and the operator were guilty of negligence in allowing train No. 6 to run into the block and collide with No. 3.

Were they, or either of them, fellow servants with the plaintiff's decedent, Gregory Haney, of such a character as to prevent a recovery in this case? In the recent case of *Daniels* v. *Railway Co.*, 15 S. E. Rep. 162, HOLT J., in discussing this question, collates the authorities bearing on the question. He says, among other things: "This brings us to the point involved, called the 'Ohio and Kentucky Doctrine,' to some extent adopted (by a divided court) by the Supreme Court of the United States in the Ross Case,

found also in the English 'Employer's Liability Act,' and in the acts of some other states, and understood to be sanctioned and adopted in this state, especially in the Madden Case." The same English act enumerates these vice principals as follows: "Any person in the service of the employer who has the charge or control of any signal points, locomotive engine, or train upon a railroad."

In the case of *Beuhring's Adm'r v. Railway Co.*, 16 S. E. Rep. 435, it is strongly intimated that a railroad engineer and a car numberer were fellow servants; and some authorities are brought forward in support of that position. And the court, in the opinion prepared by BRANNON, J., states that the engineer and car numberer were fellow servants; but it is also stated in the opinion that no negligence was shown on the part of the engineer, and for that reason the point did not fairly arise in the case.

In the *Ross Case* (referred to in the *Daniels Case*) which is reported in 112 U. S. 377 (5 Sup. Ct. 184) Justice FIELD says: "A conductor, having the entire control and management of a railway train, occupies a very different position from the brakeman, the porters, and other subordinates employed. He is in fact, and should be treated as, the personal representative (vice principal) of the corporation, for whose negligence it is responsible to subordinate servants. * * * In no proper sense of the term is he the fellow servant with the fireman, the brakeman, the porters, and the engineers," and much more so with a section hand.

One of the duties which a railroad company owes to its employes is to place careful and competent men in charge of its trains, who will conduct the same in such a manner as not to inflict injury and damage to those employed as laborers along its lines.

In the case of *Riley v. Railway Co.*, 27 W. Va. 146, this Court held (point 2 of syllabus) that "whenever such company delegates to another the performance of a duty to its servants which it has impliedly contracted to perform itself, or which rests upon it as an absolute duty, it is liable for the manner in which that duty is performed by the middleman, whom it has selected as its agent, and to the extent of the discharge of these duties by the middleman he stands

in the place of the company, but as to all other matters he is a mere co-servant."

So also in the *Madden Case, supra,* it was held that where an engineer on one train was injured by the negligence of the conductor on the other train, running in opposite directions, the engineer was not the fellow servant of the conductor, and the company was held responsible. Let the injury complained of in this case, then, have resulted from the negligence of either the operator or the conductor, we must hold that the defendant was there acting through these agents, and either of them was the *alter ego* of the company, and that their negligence was the defendant's negligence.

So also in the recent cases of *Schroeder* v. *P. C. & A. R'y Co.,* 108 Mo. 323 (1891) and *Foster* v. *Mo. Pac. R'y Co.,* 115 Mo. 165 (1893) the same doctrine is laid down, Judge Barclay delivering the opinion in each case.

Having arrived at this conclusion, the only remaining question we wish to consider is whether the plaintiff's decedent was guilty of contributory negligence. Looking to the evidence, we find that he was on board the caboose with forty or fifty others, where he had a perfect right to be. How he got off when the collision came is not made clear by the evidence. He was found immediately afterwards, near the side of the car. He may have been thrown from the open door by the violence of the shock, or he may have jumped off. And, drawing the inference most favorable to the defendant, let us say he jumped off, and thereby received the injury which resulted eventually in his death. The question then is, did he, by jumping from the car under the circumstances, contribute to his own injury? In other words, was he guilty of such contributory negligence as to defeat the recovery in this case?

It may be true that his action was induced by a mistaken apprehension, or that he was moved by an erring judgment; but it must not be forgotten that he was in a car with fifty others, a freight-train was approaching at the rate of twelve or fifteen miles an hour, and some one cried out there was a train coming, and to jump. The question is, what did self-preservation prompt? Was he to wait until the crash came, or was he to try and escape

the shock, the scalding steam, and the flying splinters which are the usual accompaniment of such collisions. It is true that by remaining quiet he might have escaped injury as others did; but what was the natural impulse, and what would the great majority of men have done, however calm may have been their nervous temperament, under the same circumstances? There can be but one answer—they would have made every effort to escape.

Now, what does the law require of a man thus situated? Shearman & Redfield on the Law of Negligence (volume 1, § 89) under the heading, "Effect of Mistaken Judgment under Sudden Alarm," states the law as follows: "In judging of the care exercised by the plaintiff, reasonable allowance is always made for the circumstances of the case; and if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under this disturbing influence, although, if his mind had been clear, he ought to have done otherwise, especially if his peril is caused by the defendant's fault. If one is placed by the negligence of another in such a position that he is compelled to choose instantly in the face of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence, placed in such a position, might make, the fact that, if he had chosen the other hazard, he would have escaped injury, is of no importance. When the question is one of mere inconvenience, and not actual danger, some moderate risk may be taken, if there is no obvious danger. But the plaintiff will be chargeable with contributory negligence if he runs the risk of an obvious and serious danger, merely to avoid inconvenience."

In this connection it may be noted that Dr. Elliott states in his testimony that the plaintiff's decedent had an exceedingly excitable and nervous temperament, which may, to some extent, account for his preferring to jump from a car standing still than to run the risk attendant upon the impending collision.

Patterson, in his work on Railway Accident Law, at page 376, says: "It is not contributory negligence in a servant

to jump from a moving train in order to avoid an apparent danger, such as an imminent collision; citing *Banking Co.* v. *Rhodes,* 56 Ga. 645, in which case the court held that "where a baggage master upon a train, in imminent danger of collision, jumps therefrom, it is no defence to an action for injuries sustained that the conductor ordered him to jump. Where a collision is inevitable such action becomes one of reasonable precaution. Such an employe assumes the risks necessarily incident to his occupation, but not such as result from the negligence of his coemployes" (unless it be the negligence of a fellow servant).

In the case of *Banking Co.* v. *Roach,* 64 Ga. 635, point 2 of syllabus, it was held that, "an engineer having jumped from his engine, and been killed, and the question being whether or not he was without fault, the necessity for jumping, his ability to jump, and the safety with which he could do so are all for the consideration of the jury." And so we think, subject, however, to the instructions of the court; the question involved being a mixed one of law and fact. Our conclusion, however, is that, under the circumstances, Gregory Haney was not chargeable with contributory negligence.

One more question: Were the damages ascertained by the jury four thousand five hundred dollars excessive, or so excessive as to require the court to interfere with the verdict? Chapter 103 of our Code, s. 6, which treats of actions for injuries, provides that "in every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars," *etc.*, as a matter of course, each case must be controlled by its own circumstances.

In the case of *Borland* v. *Barrett,* 76 Va. 137, Staples, J., delivering the opinion of the court, says: "The wisdom of the law has constituted the jury, and not the court, the proper tribunal for the assessment of damages in cases like the present; and their verdict will not be disturbed unless it shows that the jury were actuated by passion, prejudice, or undue influence, or unless the amount is grossly excessive upon any just view of the evidence which might have been taken by the jury. No rule of law is perhaps more firmly established than this, both by the English and American cases"—citing numerous authorities,

It is true that in cases like the one at bar the damages are merely compensatory, while the case in which the above decision was rendered was an assault and battery case, in which vindictive damages might be given ; yet, in my opinion, the above clause from the opinion of Judge STAPLES propounds correctly the law.  So also in the case of *Zinc Co.* v. *Black's Adm'r*, 88 Va. 303 (13 S. E. Rep. 452) a case in which an employe was killed by the caving in of a bank by reason of the negligence of the defendant. Upon the question of excessive damages, the court held that, "whilst, under Code, § 3392, the question of a new trial, where the damages are too small or too large, is under the control of the court, yet the verdict will not be disturbed, unless it shows the jury were actuated by passion, prejudice, or undue influence;" and it was held error, under the circumstances, to set aside a verdict of ten thousand dollars as excessive.

In the case of *Johnson* v. *Railroad Co.* 25 W. Va. 571, this Court held that negligence was in most cases a mixed question of law and fact, and generally what particular facts constitute negligence is a question for the determination of the jury, from all the evidence before it bearing on the subject, rather than a question of law for the court.  See *Washington* v. *Railroad Co.*, 17 W. Va. 214. In the circumstances of this case, looked upon in the light of the authorities above cited, the judgment complained of must be affirmed with costs and damages.