# 𝕎𝕪𝕥𝕙𝕖𝕧𝕚𝕝𝕝𝕖.

88  303
90    9

## BERTHA ZINC CO. v. BLACK'S ADM'R.

### July 23rd, 1891.

### Absent, *Richardson*, J.

1. DEATH BY WRONGFUL ACT—*Negligence—Case here.*—Defendant company was cutting through side of a mountain a horizontal opening to lay railroad track to zinc mines. The cut was eighteen feet deep and twelve feet wide in strata of thin slate, with loose slip clay between, with perpendicular banks and no artificial supports. Deceased was inexperienced and ignorant of the treachery of the clay. Defendant knew the danger, and regarded it a question of "profit against risk" to put in supports. Deceased was placed at work in the bottom of the cut, in the afternoon after a rain, which made the place more dangerous; and was killed by a slide of clay from the side of the bank;

HELD:
>    Defendant was guilty of negligence in working the cut without supports to the banks, and also in doing so in the afternoon after the rain.

2. IDEM—*Excessive damages—New trial.*—Whilst under Code, § 3392, the question of a new trial, where the damages are too small or too large, is under the control of the court, yet the verdict will not be disturbed unless its shows the jury were actuated by passion, prejudice, or undue influence, and in case here;

HELD:
>    Error to set aside a verdict of $10,000 as excessive. And this court will enter judgment on that verdict, and not notice the proceedings on the second trial.

Error to judgment of circuit court of Wythe county, rendered March 15th, 1890, in an action of trespass on the case, wherein J. P. Vaughan, administrator of Michael Black,

deceased, was plaintiff, and the Bertha Zinc Company was defendant. The object of the action is to recover damages on account of the killing of the plaintiff's intestate through the negligence of the defendant company and its agents.

At the trial the evidence on both sides was heard, certain instructions given, and others refused by the court, when the jury rendered a verdict for $10,000 damages against the defendant; whereupon the defendant moved the court to set aside the said verdict and grant a new trial, upon the ground that the said verdict was contrary to the law and the evidence, on account of the misdirection by the court to the jury as to the law of the case, and because the damages were excessive.

The court did set aside the verdict on the ground that the damages were excessive, and overruled all other grounds of exception. To which action of the court, in setting aside the verdict because the damages were excessive, the plaintiff excepted, and filed his bill of exception, which was duly signed and made a part of the record, and all the evidence was certified. A new trial was thereupon had, when the jury found a verdict for the plaintiff, and assessed his damages at $9,166. The defendant again moved the court to set aside the verdict and grant to it a new trial, upon the ground that the verdict was contrary to the law and the evidence. But the circuit court overruled this motion, and rendered a final judgment in the cause. Whereupon the defendant applied for and obtained a writ of error to this court.

*Brown & Moore* and *F. S. Blair*, for plaintiff in error.

*James A. Walker* and *Robert Crockett*, for defendant in error.

LACY, J., delivered the opinion of the court.

The plaintiff in error assigns various alleged errors, but the defendant in error assigns as error to his prejudice the action

of the court in setting aside the first verdict, because the damages assessed by the jury were deemed excessive. And we will consider this assignment first, as it stands in point of time prior to all others.

The circuit court refused expressly to disturb this, the first verdict, because of all grounds of exception alleged by the defendant, except that which concerned the amount of the damage; but the defendant did not except. The first matter for inquiry in this case is whether the circuit court erred in granting a new trial, and in not rendering judgment upon the first verdict. The verdict in question was set aside because the damages allowed by the jury were, in the opinion of the trial judge, excessive. How far and when may a judge review the action of the jury in fixing the amount of damages? In this state, by our statute law, it is provided that " the jury in any such action may award such damages as to it may seem fair and just, not exceeding $10,000, and may direct in what proportion they may be distributed," &c., &c. " But nothing in this section shall be construed to deprive the court of the power to grant new trials, as in other cases." Code of Va., sec. 2903. This section refers to cases mentioned in the preceding section, where death is caused by the wrongful act of another.

In personal torts and actions generally sounding in damages, it being within the strict province of the jury to estimate the injury, unless there be a manifest abuse, the court will not interfere. In its general acceptation this rule applies equally to an unjust assessing of the damages as to an intemperate excess. Justice Buller says (Bull, N. P. 327) : " In actions grounded upon torts the jury are the sole judges of the damages, and therefore the court, in such cases, will not grant a new trial on account of the damages being trifling or excessive." This was the common law rule, and was followed in this state until changed by statute. 1 Rev. Code, p. 510, secs. 96 and 97; Code of 1873, chap. 173, sec. 15 ; Code of Va. 1887, sec. 3392. " In any civil case or proceeding the court before which

a trial by jury is had may grant a new trial, unless it is otherwise specially provided. A new trial may be granted as well where the damages awarded are too small as where they are excessive."

While the law thus expressly leaves the question under the control of the court, the jury is, nevertheless, the proper tribunal for the assessment of damages in cases like the present; and, as was said by Judge Staples, in *Borland* v. *Barrett*, 76 Va. 137, their verdict will not be disturbed, unless it shows that the jury were actuated by passion, prejudice, or undue influence, or unless the amount is grossly excessive upon any just view of the evidence which might have been taken by the jury. Citing *Peshin* v. *Sheppardson*, 17 Gratt. 488; *Turner* v. *Donahoe*, 9 Wash. 228; 2 Sed. on Meas. of Dam. 334; Moak's Underhill on Torts, 72, 226.

In *Dangerfield* v. *Thompson*, 33 Gratt. 136, it was said by this court: "The question of what damages the plaintiff sustained was a question for the jury to determine. The appellate court will not interfere with such a verdict, unless it appears that the verdict is plainly extravagant and excessive."

And, as has been often said, the reason for holding parties so tenaciously to the damages found by the jury in personal torts is, that in cases of this class there is no scale by which damages are to be graduated with certainty. They admit of no other test than the intelligence of the jury, governed by a sense of justice. It is, indeed, one of the principal causes in which the trial by jury has originated. From the prolific fountain of litigation, numerous cases must daily spring up calling for adjudication for alleged injuries, accompanied with facts and circumstances affording no definite standard by which these alleged wrongs can be measured, and which, from the necessity of the case, must be judged of and appreciated by the views which may be taken of them by impartial men. To the jury, therefore, as a favorite and almost sacred tribunal, is committed by unanimous consent, the exclusive task of exam-

ining those facts and circumstances, and valuing the injury, and awarding compensation in the shape of damages. The law which confers on them this power, and exacts of them the performance of this solemn trust, favors the presumption that they are actuated by pure motives. It therefore makes every allowance for different dispositions, capacities, views, and even frailties, in the examination of heterogeneous matters of fact, when no criterion can be supplied. And it is not until the result of the deliberations of the jury appears in a form calculated to shock the understanding, and impress no dubious conviction of their prejudice and passion, that courts have found themselves compelled to interfere. Graham and Waterman on New Trial, 452.

In this case the negligence of the defendant is clearly established. The defendant company was engaged in cutting through the side of the mountain a horizontal opening, in which they intended to lay a railroad track to reach the zinc mines to be opened in the mountain. This cut was opened eighteen feet deep and twelve feet wide, with the banks perpendicular, and not propped nor boarded up, nor supplied with any support. It was cut in what is called three benches, the first bench being cut four feet deep, and in advance of the second, which followed with a depth of four feet more, and that by the third, which was still behind the second, and was opened four feet more; and the first and second bench had a floor laid behind, over which the dirt was carried off as it was dug, in wheelbarrows. The third or bottom cut had a dirt floor, which was the bottom of the cut, over which the wheelbarrows were rolled. The deceased was a new man, and was employed on the top bench. But a noon-day shower having driven off the hands, and a good many did not return in the afternoon, and among them the wheelbarrow men for whom he had been digging dirt in the morning at the top bench, and he desiring to make a full day's work and receive a full day's pay, asked to be assigned to work elsewhere, there being

nobody to haul off the dirt upon his bench. He was set to work in the bottom of the cut, on the ground floor, where he was very soon killed by a slide from the side of the cut, which covered him up in clay, and injured several others.

The evidence shows that the earth at this point was very treacherous, being composed in large degree of what is termed slip clay, or block clay, which was liable to sudden slides, which came, without warning, with great suddenness, being described as quick as lightning; the cut being driven through slanting strata of thin layers of slate rock, with this loose clay lying between, which, when deprived of support at the base, slipped through between the strata, to which it was not adherent, and into which it was loosely deposited.

The evidence shows further that the company knew of the dangerous character of this formation; and it shows further that the attention of its agents was called to the dangerous character of the cut, and that they admitted it; and, when urged to slant the sides so as to leave a support for this slip clay, they declined, saying that they would hurry through to the zinc, and then slope the sides; and, when warned that support ought to be put up for the protection of human life, said it was a question of risk against profit, and they would not do it, and directed that nothing be said about it whatever. It is also found that the deceased had no notice or knowledge of the danger, and that when down under the two floors it was too dark to see much about it. It was necessary to avoid this danger, only to slant the sides on one side, that being the side from which, by the formation of the seams, the base was removed from the clay; on the other side the top sections being removed. This was a precaution which had to be taken before the cut could be used for the purpose for which it was made, and it was against the advice of the boss of the cut, as he is termed, that the manager compelled the cut to be driven in with perpendicular sides. It was negligence to so unnecessarily expose the lives of the workmen. The sides were sloped

after the accident. This should have been done in the first instance, and this life would then have been spared. It was negligence to go on with the work in the afternoon after the rain, as the rain greatly increased the danger.

The negligence of the company is clearly established; but it is sought to condone this by a charge of negligence on the part of the deceased to go in the cut at the bottom, when his work was on the top, and that, being thus guilty of contributory negligence, which was the proximate cause of the injury which he sustained, he cannot therefore recover.

But the record furnishes no support for this whatever. The deceased, a new man, and uninformed about the business, worked where he was put to work by the person in charge. He was put to work in the top in the morning, and in the evening, there being no work for him to do there, he was put to work on the bottom. There is nothing to show that he knew anything about the danger then; while, on the other hand, it is abundantly shown that the defendant did thoroughly understand the dangerous character of the place, and regarded it as a question of profit against risk.

It is a case in which the verdict of the jury should not have been disturbed, and judgment should have been rendered on the first verdict. The circuit court erred in setting aside the verdict of the jury on the first trial, and for that cause the judgment of the said circuit court will be reversed and annulled here, and judgment rendered here on the first verdict; and it thus becomes unnecessary to notice any of the proceedings on the second trial.

JUDGMENT REVERSED IN FAVOR OF DEFENDANT IN ERROR.