### Staunton

COLONIAL COAL AND COKE CO. V. GASS, ADMINISTRATRIX.

September 9, 1912.

Absent, Cardwell, J.

1. MASTER AND SERVANT—*Vice-Principal—Regulations of Company— Discovering Defects.*—The rule of a mining company, which requires a machine operator to examine the condition of his working place, and, if found to be unsafe, to report the same to the mine boss, and cease work at such place until the same is made safe, is intended for the safety of the operator and his machine, and is not meant to charge him with the duty of discovering and reporting defects which may result in injury to others. Such an operator is not a vice-principal. A miner who, for his own protection, is charged with the duty of looking out for defects and reporting them, is not a vice-principal of the company for which he is working, but a fellow servant of other employees in the mine.

2. DEATH BY WRONGFUL ACT—*Elements of Damages—Earnings During Probable Life of Decedent—Beneficiaries.*—In computing the damages to be recovered, in an action for a death by wrongful act, the plaintiff may recover the probable earnings of the intestate during what would have been *his* probable lifetime, and is not limited to such earnings during the probable lifetime of the beneficiary. In Virginia the recovery is for the wrongful death, and not merely because there are dependent relatives, and hence the right of recovery is not affected by the absence of relatives, or by the fact that surviving beneficiaries are rich or poor. Moreover, the recovery of estimated wages may be for the benefit of the mother of an infant, although her husband is still living.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Vicars & Peery* and *Bullitt & Chalkley,* for the plaintiff in error.

*W. H. Werth* and *E. M. & E. H. Fulton,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

Paul Burnett, the plaintiff's intestate, a boy eighteen years of age, was killed in the coal mine of the defendant company by a fall of slate from the roof of room No. 36, while engaged in the discharge of his duties as a mule driver. His death is alleged to have been caused by the negligence of the defendant company, and this suit was brought to recover the damages resulting from such negligent killing. There was a verdict and judgment in favor of the plaintiff, which is brought under review by the present writ of error awarded the defendant company.

The plaintiff's third instruction, which is objected to, tells the jury that "if they believe, from the evidence, that the defendant put upon Eugene Austin and Roy Shoemaker the duty of exercising ordinary care in providing and maintaining a reasonably safe roof at the place in question, then said Austin and Shoemaker were not fellow servants of Paul Burnett, with reference to this duty, but were the representatives of the defendant as to that duty; and the failure of either of them in the performance of this duty (if such failure there was) would be the personal failure of the defendant itself."

The record shows that Eugene Austin and Paul Shoemaker were ordinary laborers in the defendant's mine, the former operating a machine for cutting the coal, and the latter a coal digger. Independent of the company's rule

No. 13, which is relied on by the plaintiff, there is no evidence tending to show that either of these parties was a vice-principal of the defendant company.

Rule No. 13 is relied on as showing that it was Austin's duty to look after the roof at the place of the accident. So far as the rule concerns the roof of the mine or imposes any duty upon Austin, it provides that the machine man "shall also examine the condition of his working place, and if found unsafe, report the same to the mine boss, and cease work at such place until the same is made safe." This language does not, and was manifestly not intended to, impose upon Austin the duty of providing and maintaining a reasonably safe roof. The whole duty put upon him was to examine the roof when he went to work thereunder, and if found unsafe to report the same to the mine boss and cease work until the same was made safe. In other words, so far as reporting a defect was concerned, or staying out of the place until the defect was cured, he was under no higher or further duty than any other employee would have been to report any discovered defect in the roof. Rule 13, so far as applicable to machine operators, meant that they should look out for the purpose of securing their own safety and guarding the machine against danger. It did not mean that they should be charged with the duty of discovering and remedying defects which might result in injury to others. This duty of inspection and having defects remedied rested upon the mine boss, who was the vice-principal of the company. It is unquestionably to the interest of all engaged in the dangerous work of mining coal that the company should make it the duty of as many persons as possible to look out for defects and dangers and report the same to the mine boss as soon as discovered. It would, however, place upon the company a burden it could not well bear to hold that every miner was a vice-principal of the company, whose

duty it was to keep a lookout for defects and report them when discovered to the mine boss. The miner who, for his own protection, is charged with the duty of looking out for defects and reporting them, is not the vice-principal of the company, but is a fellow servant of all other employees.

We are of opinion that the instruction under consideration, being without evidence to support it, was erroneous, and should have been rejected.

Instruction No. 4, given for the plaintiff, is subject to the same objection that was urged to No. 3. It tells the jury that it was the duty of Austin and Shoemaker, as well as Draughan, the mine boss, to look after and discover defects in the roof, as mentioned in instruction No. 3, and that if they failed in the performance of such duty the company was liable. For the reasons already given, this instruction should also have been refused.

Objection is taken to the action of the court in refusing to give for the defendant the following instruction: "The court further instructs the jury that, under the rules of the defendant company, which were read in evidence to the jury, with reference to the duties of coal diggers and machine men, in looking after and making safe the roof of the mine in their respective working places, the intent and meaning of the said rules was that said machine men and said coal diggers should look after the roof of the mine in their said places and make the same safe in so far as it was necessary to protect themselves, respectively, from danger, but that the rules of the company, read in evidence as aforesaid, were not intended to mean, and did not mean, that the said machine men and coal diggers should be charged with the duty of making their respective working places safe for others to work in; that so far as other persons were concerned, that is, persons other than the said machine men and coal diggers, the duty rested upon the mine boss to use ordinary care to see that the

said places were safe, and if the company, through its mine boss, did use ordinary care to see that the roof which caused the accident in this case was safe, then the company cannot be held liable for any negligence on the part of the said machine men or coal diggers, if such there was, in failing to use ordinary care to see that such place was safe."

This instruction should have been given. It is supported by the evidence, properly interprets the rules of the company, and correctly states the law applicable to this phase of the case. Falling slate from the roof is one of the greatest dangers in mining and one which requires constant watchfulness and care to guard against. The working place of the miner is constantly changing as he drives into the face of the coal, and what may be entirely safe at one hour may not be the next. Hence, the rules of the company properly provide that not only the mine boss, its vice-principal, shall make regular inspections, but that the machine cutter shall, as he proceeds with his work, for the protection of himself and the machine, look after the condition of the roof, and also that the miner should look after the roof in his own working place and do what, at the time, might appear necessary to protect himself, or, if he were unable to remedy any defect he might discover, to go out of the mine and report the trouble to the mine boss and remain out until the defect was repaired. These rules were never intended to make each miner the *alter ego* of the company. The law of self-preservation would demand of the miner as much care for himself as is required of him by the rules in question.

The action of the court in giving for the plaintiff instruction No. 7, on the measure of damages, is assigned as error. Two objections are urged to this instruction: (1) That it allows the plaintiff to recover as damages the probable earnings of the intestate during what would have been his

probable lifetime, whereas it is contended that the court should have limited the recovery to the probable lifetime of the beneficiary, who was the plaintiff's mother; and (2) that the mother, having a husband, had no right to recover on account of the wages her son might have earned during his lifetime.

In support of these propositions, numerous authorities from other jurisdictions are cited, but whatever may be the law in other States, it has long been settled by the decisions of this court that both contentions are untenable. *B. & O. R. Co.* v. *Wightman,* 29 Gratt. (70 Va.) 431, 26 Am. Rep. 384; *N. & W. Ry. Co.* v. *Phillips,* 100 Va. 362, 41 S. E. 726; *Pocahontas C. Co.* v. *Rukas,* 104 Va. 278, 51 S. E. 449.

In *Wightman's case, supra,* it is said that "under the Virginia statute the damages, it is true, are given first to the husband or wife, parent or child, but if neither of these is alive, the action then may be maintained and the damages will be assets to be disposed of according to law. In this respect the Virginia statute differs from that of all the other States."

In other words, the recovery with us is for the wrongful death, and not merely because there are dependent relatives, and, therefore, the right of recovery is not affected by the absence of relatives or by the fact that surviving beneficiaries are wealthy or poor.

In *Wightman's case, supra,* in discussing the elements of damages recoverable, Judge Staples says they may be ascertained, first, "by fixing the same at such sum as would be equal to the probable earnings of the deceased, taking into consideration the age, business capacity, experience and habits, health, energy and perseverance of the deceased during what would probably have been his lifetime, if he had not been killed."

The instruction under consideration appears to be practically a reproduction of instruction No. 3 in the *Rukas*

*case, supra,* which provides that the damages should be fixed at such sum as would be equal to the probable earnings of the deceased during what would probably have been his lifetime had he not been killed, and no mention is made of the lifetime of the surviving beneficiary. That instruction was excepted to, and the giving of it assigned as error. In disposing of the exception, this court says: "With regard to the instruction as to what constitute proper elements of damage in this class of cases, it is conceded that the instruction conforms to the decisions of this court, but a different rule is invoked as being, it is alleged, more in harmony with the weight of authority in other States. It is sufficient to say that this court has recently had occasion to consider that question, and no sufficient reason is perceived to justify a departure from our own precedents."

We do not deem it necessary to prolong this opinion with a detailed discussion of the remaining assignments of error. It is sufficient to say that each of them has received due consideration, and that no error is thereby disclosed prejudicial to the rights of the defendant.

For the errors herein pointed out, the judgment complained of must be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*