## Richmond

LAWRENCE L. MATTHEWS AND MARTIN M. TERESCHENKO, IN-
DIVIDUALLY AND AS PARTNERS, TRADING AS MATTHEWS AND
TERESCHENKO, AND WILLIE CLEVELAND HICKS v. DUVAL
Q. HICKS, JR., ADMINISTRATOR OF ESTATE OF
WELFORD FLAGG STANLEY, DECEASED.

June 13, 1955.

Record No. 4355.

Present, All the Justices.

The opinion states the case.

*Moncure & Cabell,* for the plaintiffs in error.

*Butzner & Hicks,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

The plaintiff, DuVal Q. Hicks, administrator of the estate of Welford Flagg Stanley, instituted this action against Lawrence L. Matthews and Martin M. Tereschenko, partners, trading as Matthews and Tereschenko, and Willie Cleveland Hicks, defendants, to recover damages for the wrongful death of plaintiff's decedent which resulted from injuries sustained when a road roller he was operating was struck from behind by a tractor trailer unit owned by Matthews

and Tereschenko and operated by their employee, Willie Cleveland Hicks. In addition to the allegations of negligence, the motion for judgment alleged that the plaintiff's decedent died childless, survived only by his widow, Edna Stanley. The defendants in their joint and several grounds of defense denied the allegations of negligence and admitted that decedent died childless, survived only by his widow, but alleged that she sustained no damage "to which she was morally or legally entitled by virtue of his death" because she had abandoned him and was living in adultery with another at the time of and for some time prior to his death.

A jury trial resulted in a verdict of $5,000 for the plaintiff, on which verdict the trial court entered final judgment for reasons stated in its written opinion. To review that judgment this writ of error was awarded the defendants.

The questions properly before us are: (1) whether the evidence is sufficient to support the verdict; (2) whether the court erred in refusing certain instructions tendered by defendants, and (3) whether the court erred in refusing to admit certain evidence. Since no issue of contributory negligence is presented, our first inquiry is confined to the determination of whether the jury was warranted in finding that the driver of the tractor trailer was guilty of negligence which proximately caused the death of plaintiff's decedent.

On November 16, 1951, about 3:15 p. m., Welford Flagg Stanley, an employee of the State Highway Department, was driving a five ton road roller in a southerly direction along the extreme west lane of U. S. Highway No. 1, which runs north and south. At that time he was about two miles north of Ladysmith in Caroline county, where the highway was level, 40 feet wide and divided by white lines into four lanes, each ten feet in width. A car with an attached house trailer was directly behind the road roller and directly behind the house trailer defendant Hicks was driving an empty tractor trailer unit which was about 45 feet long. Hicks testified that when he was about 75 feet behind the house trailer and traveling about 40 miles per hour he looked in his rear view mirror, saw no other vehicles behind him, gave a left turning signal and without sounding his horn began turning into the lane to his left with the intention of passing the house trailer. He further testified that while he was moving out of his right lane the house trailer also began turning into the left lane; that at about that time a car which he had not observed came from behind him along his left

side in the left lane sounding its horn. To avoid striking this car he turned back to the right and struck the road roller. He also testified that "When I saw the roller I was on him"; that he did not apply his brakes prior to the collision or thereafter but "just let it roll across and clear the road" and stop of its own accord. Stanley, the driver of the road roller, was fatally injured and both the tractor trailer and the road roller were badly damaged.

The investigating officer, Trooper A. R. Sisson, testified that there were 27 feet of dual wheel skid marks prior to and near the point of impact; that he found the road roller on its top about 54 feet from the point of collision; that it was completely off the hard surface on the west side of the highway and headed in a northeasterly direction. He also testified that the defendants' truck traveled about 300 feet from the point of impact, coming to rest in a ditch on the east side of the road and that its drive shaft was broken, indicating that its motor furnished no power after the impact. The weather was cloudy and the highway was dry and straight for about 150 yards north of the collision.

We do not agree with the defendants' contention that there was insufficient evidence of negligence on which to submit the case to the jury.

Failure to keep a proper lookout is negligence and the duty of maintaining a proper lookout requires not only the physical act of looking with reasonable care, but reasonably prudent action to avoid the danger which a proper lookout would disclose. If the driver of a vehicle looks and does not see what a reasonably prudent person would have seen under the circumstances in time to take the necessary precautions to avoid danger, he is just as guilty of negligence as if he fails to maintain any lookout. *Leo Butler Co.* v. *Wilbun*, 192 Va. 263, 64 S. E. (2d) 738; *Via* v. *Badanes*, 189 Va. 44, 52 S. E. (2d) 174; *Stillman* v. *Williams*, 181 Va. 863, 27 S. E. (2d) 186; *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 194 S. E. 683; *Bottling Co.* v. *Lambert*, 196 Va. 949, 86 S. E. (2d) 156.

Code, § 46-233 provides that every driver who intends to "turn or partly turn from a direct line shall first see that such movement can be made in safety." We held in *Smith* v. *Clark*, 187 Va. 181, 189, 46 S. E. (2d) 21, that while this provision does not make such driver an insurer of the safety of his turn, he must "use reasonable and ordinary care under the circumstances to see that such movement can be made safely." *Sink* v. *Masterson*, 191 Va. 618, 625, 61

S. E. (2d) 863. Code, § 46-225 provides that when the driver of a vehicle traveling outside of a business or residence district undertakes to pass another vehicle proceeding in the same direction, he "shall give audible warning" so that the overtaken vehicle may give way to the oncoming vehicle. See Code, § 46-227; *Poole* v. *Kelley*, 162 Va. 279, 173 S. E. 537. Here the driver of the tractor trailer failed to give an audible warning before attempting to pass another vehicle proceeding in the same direction. Had this warning been given the car pulling the house trailer would have probably remained between him and the road roller.

In addition to this failure of the tractor trailer driver to give audible warning that he intended to pass the house trailer, he also turned from the right hand lane of a straight, level, four lane highway into his passing lane without first using reasonable care to see whether such movement could be made with safety. Although he testified that he looked in his rear vision mirror and saw no vehicles, a car was not only behind him but was in the act of passing him at the very time when he made his turn to the left. It is therefore clear that he did not look or looked carelessly. In either event the result is the same; he failed to exercise a proper lookout under the circumstances. Furthermore, after negligently turning into the passing lane he failed to keep a proper lookout when he turned back into the right hand lane where he struck the road roller. This second turn was plainly made without first observing whether such movement could be made in safety, because as he stated in his testimony, "When I saw the roller I was on him." Hence, there was ample evidence on which a jury could find that the driver of the tractor trailer was guilty of negligence which proximately caused the collision.

Defendants assign error to the refusal of the court to grant their instructions C and D. Instruction C would have told the jury that if the collision occurred without negligence on the part of either the driver of the tractor trailer or the plaintiff's decedent, then it was an unavoidable accident and the defendants could not be held liable. Instruction D would have told the jury that if they found the driver of the tractor trailer operated his vehicle "without negligence on his part, and that a passing automobile negligently forced him" into the road roller, and that "the sole proximate cause of the accident was the negligence of the passing motorist, then you cannot find a verdict against the defendants in this case." The theory upon which both of these instructions is based is that the

sole proximate cause of the collision was the negligence of the passing motorist.

Since other instructions told the jury that they could find the defendants liable only in the event the driver of the tractor trailer was guilty of negligence which proximately caused the collision and that the plaintiff's decedent was not negligent, Instruction C does no more than characterize the absence of these conditions of liability as an unavoidable accident. Such an instruction is improper where, as here, the only evidence of the cause of damage or injury is that it resulted from human fault. *Hogan* v. *Kansas City Public Ser. Co.*, 322 Mo. 1103, 19 S. W. (2d) 707, 65 A. L. R. 129. See *Va. Pub. Ser. Co.* v. *Carter*, 168 Va. 171, 190 S. E. 155. Hence it was not error to refuse Instruction C. Instruction D was also properly refused. Since other instructions fully covered the issues of negligence and proximate cause, the effect of this instruction was to argue to the jury that the defendants did not proximately cause the collision. Furthermore, it assumes that the "passing motorist" was negligent without indicating any basis for such a determination by the jury.

The most serious question presented by the assignments of error is whether the court erred in refusing to admit certain evidence of the conduct of deceased's widow prior to his death. Under Code, §§ 8-636 and 8-638 she is the sole beneficiary of any recovery in the case.

The issue on this phase of the case first arose when in the opening statement of counsel for defendants, he stated: "I intend to show that the widow of the decedent, Mrs. Stanley, was living in—" intending to add "adultery" and also to state the facts he would present to prove such misconduct. However, counsel for plaintiff objected and his objection was sustained. When plaintiff rested the defendants called Mrs. Stanley as an adverse witness, to which action plaintiff objected on the ground that she was not a party. Court and counsel then retired to chambers where counsel for defendants stated that the reason for calling Mrs. Stanley was to prove that she had abandoned her husband and lived in adultery with one Manley Satterwhite in Maryland for about two years prior to her husband's death. Depositions tending to prove this fact had been previously taken and filed in the case. The court ruled that Mrs. Stanley could not be called as an adverse witness and limited the proof of her conduct to a period of about two weeks before her

husband's death, thus excluding all evidence of abandonment, desertion and adultery prior to what the court described as a "reconciliation" which lasted from "Saturday night until Monday morning."

Defendants called Mrs. Nettie P. Stanley, wife of decedent's brother and mother of decedent's widow, who lived in the same house with the decedent. This witness testified that about two or three weeks before the death of Welford Flagg Stanley his wife came to her home and remained there from "Saturday night until Monday morning," during which time she and decedent occupied the same room. On "Monday morning," after deceased had gone to work and despite her mother's request that she stay, the deceased's wife left with Manley Satterwhite, whom the mother had ordered off the premises.

In conformity with the court's ruling that the widow could not be called as an adverse witness, defendants later called her as their own witness. Upon her examination within the limits of the court's ruling restricting inquiry as to what occurred after the so called reconciliation, she admitted going to Maryland with Satterwhite, but denied having lived with him and denied knowing individuals who had testified by depositions in the case that she had lived with him as husband and wife in Maryland. A tender of the depositions by defendants for the purpose of impeaching the witness was refused.

■ Code, § 8-636 provides that in an action for wrongful death the jury may award such damages "as to it may seem fair and just." Beginning with the early case of *Matthews* v. *Warner*, 29 Gratt. (70 Va.) 570, 573, this court has given the phrase "fair and just" a broad and liberal construction. Both in that case and in *B. & O. R.R.* v. *Noell's Adm'r*, 32 Gratt. (73 Va.) 394, it was emphasized that our statute contains no words of limitation confining the jury to merely pecuniary damages, which is the rule applied under the English statute, Lord Campbell's Act, and in most of the States.[1] "There are now statutes creating a right of action for wrongful death in nearly all of the States. They embody substantially the provisions of Lord Campbell's Act in so far as the right to maintain the action for wrongful death is concerned. However, the pro-

---

[1] See House Bill No. 229, House Journal 1952, p. 92, which was a proposal, but not enacted, to amend and re-enact Code, § 8-636 to allow an award of such damages "as are a fair and just compensation for the pecuniary injury resulting from such death."

visions of the different statutes differ widely in respect to the persons' entitled to maintain the action, the persons for whose benefit the action may be maintained, the time of bringing the action, the measure and elements of damages recoverable, and the distribution of the same." *Porter* v. *Va. Elec. & Power Co.*, 183 Va. 108, 115, 31 S. E. (2d) 337.

Hence cases arising in other jurisdictions are of little or no assistance on the question here presented. This is especially true since it is now well settled by a long line of Virginia decisions that damages may be awarded not only for the pecuniary loss sustained by the statutory beneficiaries (including the probable earnings of the deceased for the duration of his life expectancy in view of his health, age, business capacity, and experience) but also for loss of deceased's care, attention and society, as well as such sum as the jury may deem fair and just as solatium to the beneficiaries for their sorrow and mental anguish caused by the death. *E. g., Wolfe* v. *Lockhart*, 195 Va. 479, 78 S. E. (2d) 654; *Ratcliffe* v. *McDonald's Adm'r*, 123 Va. 781, 97 S. E. 307; *Pocahontas Collieries Co.* v. *Rukas*, 104 Va. 278, 51 S. E. 449. Subject only to the statutory maximum, the amount of damages is solely within the discretion of the jury and may not be set aside because inadequate or excessive, unless it is clearly shown that the verdict was a result of passion, prejudice, or corruption. *E. g., Harris* v. *Royer*, 165 Va. 461, 182 S. E. 276; *Bertha Zinc Co.* v. *Black's Adm'r*, 88 Va. 303, 13 S. E. 452. See 5 Michie's Jur., Death by Wrongful Act, § 17, p. 630.

While evidence of the pecuniary loss sustained by the beneficiaries is admissible on the issue of quantum of damages, evidence of the pecuniary condition, whether rich or poor, of either the deceased or the beneficiaries is inadmissible to show liability or the quantum of damages. *Chesapeake & Ohio Ry. Co.* v. *Ghee's Adm'x*, 110 Va. 527, 66 S. E. 826; *Colonial Coal & Coke Co.* v. *Gass, Adm'x*, 114 Va. 24, 75 S. E. 775. It has also been held that it is proper to show the number and ages of the beneficiaries, but evidence of their physical condition, whether weak or strong, is inadmissible both as to liability and quantum of damages. *Baltimore & Ohio R. R. Co.* v. *Sherman's Adm'x*, 30 Gratt. (71 Va.) 602, 607; *Crawford* v. *Hite*, 176 Va. 69, 10 S. E. (2d) 561. However, evidence of the physical and pecuniary condition of the beneficiaries is material on the question of the apportionment of the damages. *Crawford* v. *Hite, supra.*

■ Any recovery in an action for wrongful death can be distributed only in accordance with the express terms of Code, §§ 8-636 and 8-638, which provide for two classes of beneficiaries. The preferred class includes the wife, husband, children and grandchildren, while the deferred class includes the parents, brothers and sisters of decedent. Between members of the same class the jury has absolute discretion as to who shall receive the whole or any part of the recovery and the members of the deferred class can not take unless there are no members of the preferred class. One exception to this priority is made by Code, § 8-638, which provides that when the decedent leaves a widowed mother and also a widow or widower,[2] but no children or grandchildren, the recovery shall be divided between them in such portions as the jury or court may direct. If there are no members of either class then the amount recovered becomes assets in the hands of the personal representative "to be disposed of according to law." Code, § 8-638.

An examination of our decisions discloses that the only situation in which a person qualifying as a beneficiary under Code, §§ 8-636 and 8-638 has been *barred* from the right to share in a recovery for wrongful death is where the beneficiary's wrongful act proximately causes or contributes to the injury resulting in death. *Richmond F. & P. R. R.* v. *Martin's Adm'r*, 102 Va. 201, 45 S. E. 894; *Reid* v. *Medley*, 118 Va. 462, 87 S. E. 616; *Danville* v. *Howard*, 156 Va. 32, 157 S. E. 733. On the other hand it has been held that residence of such beneficiaries in other states or countries does not bar the right to participate in any recovery. *Pocahontas Collieries Co.* v. *Rukas*, 104 Va. 278, 51 S. E. 449; *Low Moor Iron Co.* v. *La Bianca*, 106 Va. 83, 55 S. E. 532. Neither is this right denied a child because born after the wrongful death of its father, nor is the right denied a child because illegitimate in the state where born. *Chick Transit Corp.* v. *Edenton*, 170 Va. 361, 196 S. E. 648; *Withrow* v. *Edwards*, 181 Va. 344, 25 S. E. (2d) 343.

The right of a surviving spouse, who has deserted the decedent and lived in adultery, to *share* in damages for wrongful death has not been squarely presented to this court for decision. See however, *Porter* v. *Va. Elec. & Power Co.*, 183 Va. 108, 31 S. E. (2d) 337; *Mitchell* v. *Kennedy*, 166 Va. 346, 186 S. E. 40. See generally, 16 Am. Jur., Death, § 113, p. 80. Under Code, § 64-35 dower is barred where the wife deserts and abandons her husband and under

---

[2] See Acts 1954, c. 333, p. 422.

Code, § 64-19 if either spouse leave the other and live in adultery, he or she is barred from sharing in certain personal property of the other, "unless before such death they were reconciled and lived together." See also Code, § 65-63, involving workmen's compensation. However, there is no provision in our statutes barring the right of a spouse who has deserted the decedent and lived in adultery from sharing in a recovery for wrongful death; therefore we hold that he or she is not so barred.[3]

█ In the instant case the plaintiff contends that since the decedent and his wife occupied the same room from "Saturday night until Monday morning," there was a reconciliation and that the trial court did not err in refusing evidence of the wife's conduct prior to that time.

In *Simmons & Winch* v. *McConnell*, 86 Va. 494, 10 S. E. 838, the trial court admitted evidence on the issue of quantum of damages that the habits and pecuniary affairs of the deceased wife's husband had improved since their marriage. Upon affirming the action of the trial court, this court said the fact that the surviving husband was "benefitted, morally and pecuniarily, by his married condition, is admissible evidence to show a loss or damage to him by the negligent killing of the faithful, prayerful, industrious, and thrifty wife of his bosom. The law furnishes no measure of damages other than the enlightened conscience of impartial jurors, guided by all the facts and circumstances of the particular case." 86 Va., at page 497. Thus, if evidence of satisfactory conjugal relations is admissible to show the loss sustained by a surviving spouse, then evidence that such relations have in fact been terminated is admissible for the consideration of the jury in determining what is a fair and just amount to award an unfaithful surviving spouse for the loss of the mate.

The facts and circumstances of this case fail to show such a reconciliation or reestablishment of the marital relations as to exclude the evidence of the wife's misconduct from the consideration of the jury in determining what was "fair and just." We hold,

---

[3] See House Bill No. 205, House Journal 1950, p. 157, which was a proposal, but not enacted, to add the following provision to Code, § 8-638:

"No part of the sum recovered shall, however, be distributed under the provisions of this section or § 8-636 to any surviving widow or husband who had prior to death deserted the deceased under conditions which would have been grounds for divorce from bed and board, and remained in desertion until such death, and the sum recovered shall be distributed as though there were no such surviving widow or husband."

therefore, that where the husband and wife are living apart at the time of death, evidence of desertion and adultery of the surviving spouse and sole beneficiary in an action for wrongful death is admissible on the issue of quantum of damages, unless the evidence clearly shows that a reconciliation has been entered into in good faith.

Here, the tendered evidence showed that the decedent's wife deserted him and lived in adultery for more than two years. About two weeks before her husband's death she returned and occupied the same room with him from "Saturday night until Monday morning," when she left with her paramour after her husband had gone to work. So far as the record discloses she made no other efforts at any time to reestablish her marital relations with her husband. This evidence was relevant and material for the jury to consider in determining what was fair and just under the circumstances of this case. It tends to show how much monetary award, if any, should be made by way of solace and comfort to the widow for the sorrow, suffering and mental anguish occasioned her by the death of her husband.

Defendants contend that the court erred in refusing to permit them to call decedent's widow as an adverse witness. However, since the defendants failed to comply with Rules 1:8 and 5:1, § 4, this alleged error is not properly before us, but it may not be amiss to say that upon a new trial the defendants should be permitted, if they so desire, to examine the decedent's widow as an adverse witness. In *Butler* v. *Parrocha*, 186 Va. 426, 431, 43 S. E. (2d) 1, the language of Code 1919, § 6214, now § 8-291, (pertaining to adverse witness) was construed as follows: "The only conclusion to be drawn from the language of the act and the context of the words, 'having an adverse interest,' is that the legislature intended to include, first, a party to the litigation, and, second, a person, though not a party, who had a financial or other personal interest in the outcome."

For the reasons stated the judgment of the trial court is reversed and the case remanded for a new trial limited to the issue of damages to be awarded as provided in Code, §§ 8-636 and 8-638, and according to the views herein expressed.

*Reversed and remanded.*