## Richmond

CHERYL PAULETTE CARROLL, AN INFANT, ETC. v. HARDY SNEED, ADMINISTRATOR, ETC.

March 8, 1971.

Record No. 7294.

Present, All the Justices.

*John W. Winston* (*Seawell, McCoy, Winston & Dalton,* on brief), for plaintiff in error.

*George Pilcher, Jr.* (*Pilcher, Pilcher & Strauss,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

The question for decision is whether an illegitimate child can share in a recovery for the wrongful death of her father.

Hardy Sneed, Administrator of the estate of Roland E. Sneed, deceased, brought this action to recover for Sneed's wrongful death resulting from an automobile accident. As a compromise settlement, the defendants paid $3,000 into court and were released from liability. Va. Code Ann. § 8-639 (1957).

Roland E. Sneed was survived by his illegitimate daughter, Cheryl Paulette Carroll, his parents and his brothers and sisters. Holding that Cheryl did not qualify as a beneficiary, the court ordered that the net fund (after payment of attorney's fee and expenses) be distributed to the decedent's parents and brothers and sisters. Cheryl appeals, claiming that she is entitled to the entire net fund.

Counsel have stipulated the following facts: Cheryl is the illegitimate daughter of the decedent Roland E. Sneed, he having orally acknowledged her as his daughter to several persons. Cheryl resides with her maternal grandmother, not with her mother. "Roland E. Sneed visited his daughter [Cheryl] several times each week. On occasion when he had funds he contributed to her support financially. He also contributed as he could things besides money toward her support."

The trial court held: (1) Cheryl being illegitimate, she is not entitled under Code § 8-636[1] to share in any recovery for the wrongful death of her father. (2) To exclude Cheryl from sharing in the recovery does not deny her the equal protection guaranteed by the Fourteenth Amendment to the Constitution of the United States. In reaching its second holding, the court distinguished *Levy* v. *Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), which held that a Louisiana statute excluding illegitimate children from participation in a recovery for the wrongful death of their mother denied them equal protection.

In their briefs and oral argument before us, counsel confined their argument to the trial court's second holding. At our request, counsel filed supplemental briefs directed to the question "whether the term 'children', as used in Code § 8-636 and irrespective of any constitutional consideration, includes illegitimate children". We now decide the case on that question.

*Withrow* v. *Edwards*, 181 Va. 344, 25 S.E.2d 343 (1943), controls our decision. That case involved the right of Betty Jean Edwards to share in a recovery for the wrongful death of her father. Betty Jean was illegitimate in South Carolina, where she was born, and legitimate in Virginia, where her father was domiciled at his death. This Court held that (i) since Betty Jean was legitimate and a distributee under the Virginia law of descents and distributions, she was

---

[1] Code § 8-636, as in effect at the death of Roland E. Sneed read:

"The jury in any such action may award such damages as to it may seem fair and just, not exceeding forty thousand dollars, and may direct in what proportion they shall be distributed to the surviving widow or husband and children and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased. Nothing shall be apportioned to the parents, brothers and sisters of the deceased, if there be a surviving widow or husband, children or grandchildren, but between members of the same class the jury shall have absolute discretion as to who shall receive the whole or any part of the recovery. The maximum amount of damages that may be awarded under this section in the amount of fifty thousand dollars shall not apply to any cause of action arising prior to July one, nineteen hundred sixty-six." Va. Code Ann. § 8-636 (Supp. 1966).

entitled to share in the recovery, and (ii) even if Betty Jean were regarded as illegitimate, she was made a beneficiary and entitled to share in the recovery under the Virginia wrongful death statute. "[i] Whether Betty Jean Edwards, under the law of descents and distribution, is held to be a distributee of her father's estate, or [ii] whether she is regarded as the natural child and a dependent member of the decedent's family in Virginia at the time of his death, she is entitled to the proceeds of the judgment in question." *Id.* at 356, 25 S.E.2d at 349.

The opinion in *Withrow* dealt first with Betty Jean's status as a legitimate child and distributee under Virginia law. The opinion then pointed out, however, that "[a]ny distribution of the fund recovered for a tortious killing committed in this State must be in accordance with this statute [the wrongful death statute] creating the right of action." *Id.* at 354, 25 S.E.2d at 348.

"It is clear that the primary object of the statute, like its prototype, Lord Campbell's act, is to compensate the family of the deceased and not to benefit his creditors. [citing authority.] Betty Jean Edwards is the only surviving child of the decedent. She has been a member of decedent's family since birth. In the death of her father, she suffered a substantial loss. He had bestowed upon her a father's love, care and affection, and he had maintained and supported her. The recovery obtained is in compensation for these losses." *Id.* at 354, 25 S.E.2d at 349.

Next, this Court pointed out that "if the distributees named in the statute of descents and distributions are different from the persons entitled to the proceeds named in Code, sec. 5788 [Va. Code § 5788 (1919)], the provisions of the latter control". *Id.* at 355, 25 S.E.2d at 349. The opinion then cited *Middleton* v. *Luckenback S.S. Co.,* 70 F.2d 326 (2d Cir. 1934), in which the court held that illegitimate children should share in a recovery under the Federal Death Act for death on the high seas, whether or not they were heirs and distributees of the decedent under local law.

This Court observed that while the persons who were designated as beneficiaries under the Federal Death Act and the Virginia Wrongful death act are not described in identical language, "the primary object of the two legislative acts is the same". *Id.* at 355, 25 S.E.2d at 349. We quoted with approval from the opinion in *Middleton:*

" 'There is no right of inheritance involved here. It is a statute [the Federal Death Act] that confers recovery upon dependents,

not for the benefit of an estate, but for those who by our standards are legally or morally entitled to support. Humane consideraation and the realization that children are such, no matter what their origin, alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view. The purpose and object of the statute is to continue the support of dependents after a casualty. To hold that these children or the parents do not come within the terms of the act would be to defeat the purposes of the act. The benefit conferred beyond being for such beneficiaries is for society's welfare in making provision for the support of those who might otherwise become dependent.'"

181 Va. at 355, 25 S.E.2d at 349, quoting from 70 F.2d at 329-30.

It has been argued that interpreting the wrongful death act to include illegitimate children as beneficiaries, as this Court did in *Withrow* v. *Edwards, supra,* promotes fraudulent claims and recoveries. But a person who claims to be a decedent's child has the burden of proving that the decedent was his parent. We should not assume that finders of fact will not intelligently and justly resolve issues of paternity based upon the evidence before them and guided by the law.

Having established paternity, the illegitimate child must also prove damages—that by the decedent's death he has sustained pecuniary loss, has been damaged by the loss of the decedent's care, attention and society, or has suffered sorrow and mental anguish. *See Matthews* v. *Hicks, Adm'r,* 197 Va. 112, 87 S.E.2d 629 (1955). Since a father has no duty to support an illegitimate child, absent the unusual circumstances set forth in Code § 20-61.1,[2] an illegitimate child who has not been supported by his father should not be able to show any reasonable expectation of support if the father had continued to live. And an illegitimate child who has had little or no connection with his father cannot be reasonably expected to prove damage from the loss of his father's care, attention and society, or any sorrow and mental anguish.

Except as limited by the maximum amount of recovery,[3] an award

[2] Code § 20-61.1 authorizes a court to direct a father to support an illegitimate child if the father has voluntarily admitted paternity under oath. Va. Code Ann. § 20-61.1 (1960).

[3] Now $25,000 for solace and $50,000 for financial or pecuniary loss. Va. Code Ann. § 8-636 (Supp. 1970).

of damages to an illegitimate child should not reduce the damages awarded to a wife or other children of the decedent. Unlike a personal estate passing under the intestate law, which is a fund to be distributed equally among members of the same class, damages in wrongful death actions should be awarded individually and separately to the statutory beneficiaries according to their respective damages.

A further argument, described by an example, will be noticed. If illegitimate children are included under the wrongful death act, an illegitimate child who is the sole member of the first class of beneficiaries, but who has sustained no damage, will unjustly preclude any award to a decedent's parents and more remote kindred who have sustained damages. But the existence of an unworthy legitimate child who has sustained no damage likewise precludes any award to a decedent's parents or more remote kindred who has sustained damages.

Following the precedent of *Withrow* v. *Edwards, supra*, we hold that the word "children" as used in Code § 8-636, n. 1 *supra*, includes the illegitimate child of a father whose death gives rise to a wrongful death action.[3] Accordingly, Cheryl Paulette Carroll, being the only beneficiary of the first class under Code § 8-636, is entitled to the fund held by the court in this action after provision for a fee to the guardian ad litem and for proper expenses. The judgment appealed from is reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[3] In view of this holding, we need not decide whether *Levy* v. *Louisiana, supra,* holding that the Louisiana wrongful death act unconstitutionally discriminated against the illegitimate child of a deceased mother, applies to this case.