## CIRCUIT COURT OF FREDERICK COUNTY

Bonnie L. Stottlemeyer,
Administratrix of the Estate
of Tonya Michelle Stottlemeyer,
deceased

v.

School Board of Frederick County
and Delwyn Conrad Michael

August 11, 1983

Case No. (Law) 4177

By JUDGE ROBERT K. WOLTZ

In pursuance of § 8.01-55 the personal representative has filed a petition for approval of a compromise of a wrongful death claim, and convening the parties in interest. Considering the factors in evidence, the compromise at a figure of $50,000.00 is approved. Further considering that the compromise amount will be recovered without the risks of trial, the requested fee of counsel for the personal representative is set at 30% rather than at 33-1/3%. The matter for decision becomes the distribution of the settlement as some parties in interest are infants and there is some disagreement among those *sui juris* as to the distribution.

This proceeding grows out of the tragic death shortly before Christmas 1981 of a six-year-old child alighting from a school bus near her home and quickly thereafter, perhaps as a result of slipping on ice, being run over by the wheels of the bus.

Under § 8.01-53 specifying the classes of beneficiaries in cases of wrongful death, the decedent left beneficiaries under the second class: her parents, several siblings of the half blood, some maternal and some paternal, and one brother of the full blood now age nine. Ex-

cepting a maternal half-brother now eleven, the other siblings of the half blood are adults. Those of the paternal blood had had no contact with the decedent for about two years prior to her death and little preceding that and none appeared at the convening of the parties in interest. Decedent's two maternal adult siblings and their mother favor distribution of the whole to the mother.

That there is great bitterness between the mother and father of the deceased was readily apparent at the *ore tenus* hearing. The mother seeks distribution to herself of the settlement. What the father wants by way of distribution is not entirely clear; at least he does not wish the mother to receive it all and wishes a portion either for himself or in his control for one of the infant beneficiaries.

In the early part of 1981 the parents of the decedent disposed of their jointly owned home to avoid foreclosure proceedings. Soon afterward the mother established herself in a farm house with the decedent, her two infant brothers and an older sister. She commenced work managing apartments at a very modest wage, the older daughter at home also contributing support from her wages. About two weeks after this arrangement the father left the home for parts unknown eight or nine months before decedent's death. From then until some time in June he contributed from a considerable distance out of state as little as $5.00 or as much as perhaps $125.00 toward the support of the mother, the decedent and the latter's full brother. There was no further communication between them from no later than June until he appeared for the funeral, none of the expenses of which he paid, in December.

At the time this cause arose the jury or Court could award damages as were "fair and just," such damages to include but not be limited to four statutory items. Section 8.01-52. (Since then a fifth statutory item, punitive damages in certain instances has been added. 1982 Acts c. 441.) Damages in this case are principally related to the first statutory category: "Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent," and to a much lesser extent the damages mentioned in the second category: "[R]easonably expected loss of . . . services, protection, care and assistance provided by the decedent." Of these items specified, as of the

time of the decedent's death, only sorrow and mental anguish could relate to the father.

The classes of beneficiaries as set out in Section 8.01-53 are statutory and binding on the courts, and if one falls within the class the courts are powerless to exclude him from it. *Carroll* v. *Sneed*, 211 Va. 640 (1971); *Matthews* v. *Hicks, Adm'r.*, 197 Va. 112 (1955). So the father in this case even if he were considered to have abandoned the deceased child would still remain a member of the second class of beneficiaries set up by the statute.[1] If he were the only member of that class, he alone would be entitled to any recovery (exclusive of funeral expenses and medical expenses as set out in Section 8.01-52) regardless of his attitudes or actions with respect to the decedent. *See Carroll* and *Matthews, supra.* This does not mean, however, that he could sustain proof of damages to the extent he might otherwise.

Generally as to the effect of desertion or abandonment of or failure to support a minor child on the parent's rights of recovery in a wrongful death action, see Anno., 53 ALR3d. From that annotation it appears not surprisingly that much often depends on the language of particular statutes involved. As pointed out in *Matthews*, the variations in statutes on wrongful death actions in the different jurisdictions often make cases in one of them "of little or no assistance" on a particular question under consideration.

Under § 8.01-55 providing for compromise of wrongful death actions, where an agreement on distribution of the funds among the members of a class cannot be made, "the court shall direct distribution as a jury might direct under § 8.01-52 (*sic*) as to damages awarded by them." At least as far back as the Code of 1919, § 5787, the statute on classes of beneficiaries provided that "between members of the same class, the jury shall have *absolute discretion* as to who shall receive the whole or any part of the recovery." (Emphasis added.) While this language has been eliminated from the present statute, certainly a jury, and a court in a wrongful death settle-

---

[1] As a result of 1979 Acts c. 356, Section 8.01-53 now provides for exclusion from the second class of beneficiaries a parent "whose parental rights and responsibilities have been terminated by a court of competent jurisdiction or pursuant to a permanent entrustment agreement with a child welfare agency."

ment, still has a very broad discretion in making distribution of awards, a discretion the extent of which is commensurate with the intangible, delicate and highly personal matters and relationships involved.

The jury, or judge, in deciding distribution among a class certainly has as broad a discretion in that as the jury in deciding under § 8.01-52 the amount of damages as seem to be "fair and just." That phrase is to be given "a broad and liberal construction" as attested by cases as early as *Matthews v. Warner*, 70 Va. (29 Gratt.) 570 (1877), and as recently as *Eisenhower v. Jeeter, Adm'x*, 205 Va. 159 (1964).

Though the evidence is not at all clear why the father left or whether at a later time the mother and children should have joined him, yet it is clear that he did leave his family, including the decedent, and went out of state to places many hundreds of miles distant. It is further clear that he gave that family, including the decedent, as little as $5.00 and probably no more than $125.00 support after his leaving, and no support and no communication for from six to eight months prior to the death. It is also clear that he made no contribution toward the burial expenses of the decedent. It does not appear either that even to this day he is making support contribution to his wife and their minor son or that he has ever been incapable since his departure of supporting his family.

Unless prevented by some dire circumstance, he who begets children shall support them. This is a social, moral and legal imperative of fundamental importance, not only to children and their welfare but also to the commonwealth. Though unfortunately and disgracefully it is an obligation too often violated, when voluntarily and duly performed it evidences at the very least a sense of responsibility to conform to the law and custom of society. In addition happily in most cases performance springs from a natural affection, love and solicitude for the infant beneficiaries of the duty. Failure to discharge this obligation cannot be excused on the basis of marital differences, inconvenience or unwillingness to make even severe personal sacrifice.

Though the father had previously supported the child, and likely feels perhaps great and at least some sorrow at her death and the tragic manner in which it occurred and likely now also a degree of remorse, for all of which

this Court considered making a token award to him, yet in view of his abdication of his fundamental responsibilities to the decedent it seems "fair and just" that he, though not excludable from the class, be excluded from the distribution to that class.

The remaining adults, maternal and paternal siblings of the half blood, either put forward no claim or favor distribution to the mother. The Court considered making small awards to the two younger brothers, one of the whole and one of the half blood, in token of their loss. Such distributions would be more a matter of form, the effect of which might likely be lost on their immature minds. Any share they might have received is more practically distributed to the mother, who no doubt will use a substantial part of it as she has her other resources for their nurture and upbringing. Consequently the full amount of the proposed settlement, after payment of attorney fees as approved above, costs of suit if any and the unpaid balance on burial expenses, will be for the reasons stated distributed by the personal representative to the decedent's mother.