# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Gary I. Brooks,
Executor of the Estate of
Lawrence I. Brooks,
deceased

v.

Robert L. Hannan et al.

November 22, 2000

Case No. (Law) 98-64

BY JUDGE EDWARD L. HOGSHIRE

In this wrongful death settlement, conflict has arisen concerning the distribution of $298,443.23, which constitutes the remainder of a settlement for $600,000.00. The general receiver of this Court is holding the funds.

*Authority of this Court to Distribute the Remaining Funds*

This Court is authorized to specify the distribution of the proceeds of this wrongful death settlement pursuant to Virginia Code § 8.01-54. Wrongful death matters in Virginia are statutory in nature and, as a result, "any distribution of the funds recovered for a tortious killing committed in this State must be in accord with th[e] statute creating the right of action." *Winthrow v. Edwards*, 181 Va. 344, 354 (1943).

Virginia Code § 8.01-53 specifies those persons who are beneficiaries of a wrongful death settlement as well as the damages that are compensable. The statute indicates that damages shall include, but may not be limited to, the following: sorrow, mental anguish, and solace, which may include society,

companionship, comfort, guidance, kindly offices and advice of the decedent; compensation for reasonably expected loss of (1) income of the decedent and (2) services, protection, care and assistance provided by the decedent. Virginia Code § 8.01-52. Being remedial, the statute is to be construed broadly. *See Hewitt v. Firestone Tire & Rubber Co.*, 490 F. Supp. 1358, 1366 (E.D. Va. 1980). Specifically, damages that are "fair and just" are to be awarded and these terms are to be given broad and liberal construction. *See Sawyer v. United States*, 465 F. Supp. 282, 292 (E.D. Va. 1978).

Unlike a personal estate passing under the intestate law, which is a fund to be distributed equally among members of the same class, damages in wrongful death actions should be awarded independently and separately to the statutory beneficiaries according to their respective damages. *See Carroll v. Snead*, 211 Va. 640, 644 (1971).

## Findings of Fact

Gary Brooks, Ruth Giacometti, and Kathie Wade are the sole living, natural children of Lawrence Brooks, and are statutory beneficiaries pursuant to the Wrongful Death Act ("Act").

Birdie Brooks is the widow of the decedent and a statutory beneficiary pursuant to the Act.

Janey Fridley is the adopted daughter of the decedent and is a beneficiary pursuant to the Act. Lawrence adopted Janey when she was three years old; she is now thirty-five years of age.

Jeffrey Brooks, II, is the grandson of the decedent and is a beneficiary pursuant to the Act.

Lawrence Brooks was hospitalized at the University of Virginia Medical Center from June 4, 1997, to January 1998, at which time he was transferred to Avante Nursing Home in Waynesboro, Virginia, where he lived until his death on April 19, 1998.

Gary Brooks managed his father's affairs during the last year of Lawrence's life, incurring some personal expense, inconvenience, and emotional distress. Over the last ten years of Lawrence's life, Gary Brooks and his father talked monthly and visited each other every two months.

Gary, Ruth, and Kathie devoted time and effort to care for and support their father during the last eleven months of his life. Gary, Ruth, and Kathie frequently called to check on their father's status during the last year of his life. Gary and his wife made almost daily trips to the hospital in Charlottesville, Virginia, from their home in Richmond, Virginia, near the end of the decedent's life.

Gary Brooks witnessed firsthand the steady, daily decline of his father's health, and the experience was emotionally exhausting.

Ruth Giacometti traveled from Tennessee to spend two weeks caring for her father near the end of Lawrence's life. Ruth was with Lawrence upon his final admission to the hospital. Ruth Giacometti was close to her father and she suffered sorrow, mental anguish, and grief as a result of his death.

Gary Brooks and Ruth Giacometti attended the viewing and funeral held for Lawrence.

Kathie Wade left home at the age of twelve due in large part to her father's problems with alcohol and abusive behavior. During most of her adult life, Kathie Wade spoke to her father occasionally. Before Lawrence's death, Kathie invited him several times to visit her family in Atlanta. Kathie Wade spent several weeks helping to care for Lawrence while he was hospitalized in 1997. Kathie Wade suffered sorrow, mental anguish, and grief as a result of Lawrence's death.

Kathie Wade was admitted to an alcohol treatment facility before her father's death where she could not have visitors; she was at this facility when her father died and was unable to attend the viewing and the funeral.

During the last eleven months of his life, Birdie Brooks and Janey Fridley did not care for Lawrence or make any effort to visit him or talk to him on a regular basis.

Birdie Brooks visited the University of Virginia Medical Center on one occasion in an attempt to obtain her husband's truck, which he had lent to his daughter, Kathie Wade. Birdie Brooks never visited Lawrence at Avante Nursing Home, despite the fact that her place of employment at the time was located two blocks from the Home.

Birdie Brooks and Janey Fridley did not attend the viewing or funeral for Lawrence, although they knew about it.

Lawrence was an alcoholic and often physically and emotionally abused Birdie Brooks. He once gave her a black eye. For approximately ten years before Lawrence's death, Birdie Brooks did not regularly live with Lawrence. Birdie purchased a camper trailer and lived behind Lawrence's house in the trailer. She prepared meals, slept, and performed most of her activities of daily living in the trailer. The trailer had a separate bedroom and bathroom as well as its own kitchen facilities and television.

Before Birdie Brooks purchased the camper trailer, she had her own separate bedroom inside Lawrence's house. Birdie Brooks worked throughout her entire marriage to Lawrence. In the last five years, she has been working approximately forty hours per week. Birdie Brooks now receives Lawrence's pension from Dupont consisting of $360.00 per month. Before Lawrence's

468

death, Birdie did not receive any of the benefits of Lawrence's pension. Birdie Brooks has no significant disabilities or medical impairments, other than minor back pain. She continues to work forty hours per week. Lawrence did not spend time with Birdie Brooks while he was living and healthy and their marriage was highly dysfunctional, without mutual affection.

Birdie Brooks remained wed to Lawrence for thirty-three years notwithstanding his abusive behavior. As a result of Lawrence's death, Birdie lost some protection, care and assistance as well as nominal financial support. Birdie Brooks took two weeks off from work in order to care for Lawrence at his home during his illness. Birdie Brooks has suffered minimal loss of income, support or services as a result of Lawrence's death. Birdie was the beneficiary of a life insurance policy on Lawrence's life, she inherited Lawrence's home and property, and she now receives Lawrence's Dupont pension, which he did not share with Birdie prior to his death.

Janey Fridley often witnessed the effects of Lawrence's alcoholism and his abusive behavior toward Birdie Brooks. In recent years, Janey Fridley lived next door to Lawrence and, though they communicated infrequently, Janey sometimes helped him with the upkeep of his yard as well as some other household chores. Before Lawrence died, Janey Fridley moved into Lawrence's home, without his permission, and moved her son into Lawrence's bedroom, in December 1997. Janey Fridley suffered minimal grief, loss, anguish, loss of affection or companionship upon Lawrence's death. Janey did not suffer a loss of income as a result of her father's death.

On March 13, 1998, Lawrence signed a valid and lawful Last Will and Testament which left all of his estate to Gary, Ruth, and Kathie. The will specifically referred to this malpractice claim that was pending against the University of Virginia Medical Center at that time. Lawrence expressed his intent to leave proceeds from these claims to Gary, Ruth, and Kathie. Lawrence expressly stated in his will that he intended to make no provision for Birdie Brooks or Janey Fridley.

Jeffrey Brooks is the youngest of the statutory beneficiaries. He lived next door to his grandfather and they maintained a cordial relationship. It is reasonable to infer that Jeffrey has suffered grief and loss of companionship from his grandfather's death.

*Findings of Law*

*Evidence to be Considered*

For the purpose of distribution, the Court may hear "any additional evidence." Virginia Code § 8.01-54(B). The test for relevancy is whether or not the evidence tends to cast any light on the subject matter of the inquiry. *See McNeir v. Greer-Hale Chinchilla Ranch,* 194 Va. 623, 629 (1953). Significantly, evidence of the physical and pecuniary condition of the beneficiaries is material on the question of the apportionment of damages. *See Matthews v. Hicks,* 197 Va. 112, 119 (1955).

Given the statute's clear directive that the court may hear additional evidence as well as the case law asserting that statutory language mandating a fair and just distribution is to be construed liberally, this Court will consider the 1998 will left by the decedent as evidence in the instant case, but will not be bound by its terms.

This Court will also consider the evidence of the physical and pecuniary condition of each of the beneficiaries. *See Matthews,* 197 Va. at 119.

*Collateral Source Rule*

The collateral source rule does not apply in the instant case. The Virginia Supreme Court recently defined the collateral source rule as "compensation or indemnity received by a *tort victim* from a source collateral to the tortfeasor [that] may not be applied as a credit against the *quantum damages* the tortfeasor owes." *Acuar v. Letourneau,* 260 Va. 180, 189 (2000) (emphasis added).

The issue before this Court is the distribution of a settlement and not the determination of the amount of damages; the question of quantum of damages has been decided by the terms of the settlement. Moreover, the beneficiaries in the instant case are not tort victims, but statutory beneficiaries. The collateral source rule does not apply where a party has not incurred expense in obtaining the collateral source. *See id.* There is no evidence that anyone but the decedent purchased or paid for pensions or insurance policies that are currently being distributed to the beneficiaries.

470

*Distribution of Funds*

Pursuant to Virginia Code § 8.01-54, for the reasons articulated above, this Court distributes the remaining $298,443.23 of this wrongful death settlement to the respective beneficiaries according to the following schedule:

| | |
|---|---|
| Gary Brooks | $92,814.41 |
| Ruth Giacometti | $92,814.41 |
| Kathie Wade | $92,814.41 |
| Birdie Brooks | $8,000.00 |
| Janey Fridley | $5,000.00 |
| Jeffrey Brooks | $7,000.00 |

This Court finds the above listed amounts to represent fair and just compensation for the losses suffered by each of the statutory beneficiaries and compensable under the Virginia Wrongful Death statutes.