COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia


JESUS A. FAJARDO

MEMORANDUM OPINION[*] BY
v.      Record No. 2062-24-2              JUDGE RANDOLPH A. BEALES
JANUARY 20, 2026

ANDREW STEWART, ET AL.


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven B. Novey, Judge

Elliott M. Buckner (Joseph L. Cantor; Jeffrey N. Stedman; Cantor
Grana Buckner Bucci, P.C., on briefs), for appellant.

H. Robert Yates, III (Joseph M. Rainsbury; O'Hagan Meyer, PLLC,
on briefs), for appellees.


Appellant, Jesus A. Fajardo, sued appellees, Andrew Stewart and Blue Diamond

Transportation, LLC, for negligence and vicarious liability. After a jury entered a verdict in

favor of Fajardo, Stewart and Blue Diamond moved to set aside the verdict. Following briefing

by both parties and a hearing, the Circuit Court of Chesterfield County granted Stewart and Blue

Diamond's motion. On appeal, Fajardo assigns error to the circuit court's decision to grant the

appellees' motion to set aside the jury's verdict. In addition, Stewart and Blue Diamond argue

that the circuit court erred when it ruled that there was insufficient evidence to find Fajardo

contributorily negligent.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND[1]

On November 23, 2019, Jesus A. Fajardo, a long-haul commercial truck driver was driving his regular route from Florida to New Jersey when one of the tires on his truck burst on the highway. At approximately 9:30 p.m., he stopped at the Travel Center of America truck stop off of I-95 to have the tire repaired and to fuel his truck. The truck stop included a service center, a truck scale, and several fuel bays. Between the scale and the service center was a "lighter colored patch" of asphalt. A paved travel lane passed in between the service center and the area with the truck scale and the fueling bays. Beyond the service center was a large, rear parking lot for commercial trucks. Drivers would leave the parking lot by using the paved lane to exit, and with the service center on their left, they would bear right to enter the scale or the fuel lanes or bear left to exit the truck stop.

Fajardo parked his truck in the far-left fuel bay, which was immediately next to the truck scales and the closest bay to the service center. He got out of his truck and took the shortest route to the service center, crossing the paved lane at an approximately 45-degree angle. Inside the service center, he scheduled his service, and an employee told him that it would be a two to three hour wait.

Around the same time that Fajardo was in the service center, Andrew Stewart, who was also a long-haul commercial truck driver, was in the rear parking lot preparing his truck for a trip. He needed to fuel his truck before leaving so he left the parking lot, taking the paved lane past the service center, intending to bear right towards the fuel bays. At some point on the paved lane, on the lighter colored patch of asphalt between the truck scale and the service center,

---

[1] "When a circuit court grants a motion to set aside a verdict, we grant the party for whom the jury found the 'benefit of all reasonable inferences that may be drawn from the evidence and of all substantial conflicts in the evidence.'" *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 509 (2018) (quoting *Stover v. Norfolk & W. Ry. Co.*, 249 Va. 192, 194 (1995)).

Stewart struck Fajardo with his truck. Fajardo was knocked unconscious and suffered serious injuries to his head, neck, and back.

Fajardo sued Stewart and Blue Diamond Transportation, LLC[2] in the Circuit Court for the County of Chesterfield. He asserted a negligence claim against Stewart and a vicarious liability claim against Blue Diamond. He also sought $5 million in compensatory damages.

On December 13, 2023, the parties appeared before the circuit court for a jury trial. Fajardo first presented testimony from Sergeant Phillip Miller. Sergeant Miller testified that he was dispatched to the truck stop to respond to a pedestrian that had been hit by a truck. He testified that "it had been raining pretty significantly" but that visibility was good. He also testified that the truck stop was lit with "big commercial parking lot lights." He testified that "Mr. Fajardo's truck was at the fuel island closest to the traffic collision" and that Stewart's truck was in the "yellowish no parking area." Fajardo had already been taken to the hospital by the time Sergeant Miller arrived at the truck stop. Sergeant Miller also spoke with Stewart at the scene, who told him that he hit Fajardo and that "it was raining, he didn't see the pedestrian." Sergeant Miller's "investigation revealed that it was a low speed impact."

Counsel for Fajardo then read a portion of Stewart's deposition into the record. In his deposition, Stewart testified that he was familiar with the truck stop and that "you have to be extremely vigilant" because of the frequency of pedestrian traffic. He stated, "It was raining. I remember my wipers were on. Driving up, it was extremely dark and it was really foggy, really, really foggy." He also recalled, "my flashers were on, my headlight was on." He testified that his foot was hovering over the accelerator but he did not depress it. He stated, "I just remember

---

[2] Blue Diamond was Stewart's employer. Both Blue Diamond and Stewart stipulated that Stewart was acting in the scope of his employment when he struck Fajardo. Given that there are no differing interests between the appellees, we refer to both of the appellees jointly as "Stewart."

hearing, you know, a thud, and then I just slammed on my brake." When asked if he saw Fajardo prior to hearing the thud, Stewart answered, "I can't say I saw him. I really can't say I saw him." He testified that after hearing the thud, he "jumped out immediately and saw the gentleman lying there." He stated that his "cell phone was dead, so I couldn't call 911," so he ran into the service center and asked someone inside to call 911. He testified that he struck Fajardo with the front of his truck but was unable to be more specific as to where on the front he hit Fajardo.

Fajardo testified during his case in chief. He testified that he had been to the Travel Center of America truck stop many times before and that "[i]n every trip I take, I stop there." When counsel for Stewart asked, "you have to watch out for trucks when you're walking in that area; is that correct?" Fajardo answered, "Logically." He testified that he is 5 feet, 5 inches tall, has black hair, and that on the night of the collision, he was wearing a black jacket, pants that "were blue, but they looked like black," and black shoes. He stated that he remembered leaving the service center, looking both ways, and then waking up in the hospital. He testified that he intended to take the same path back to the truck that he took walking into the service center. He also testified to the injuries he suffered as a result of the accident, including cuts to his face, a subdural hematoma, and lower back pain, and stated that he spent four days in the hospital. In addition, while Fajardo stated that he visited his primary care doctor complaining of lower back pain, muscle weakness, neck pain, and joint pain before the accident, he testified that his lower back pain worsened after the accident.

Fajardo's counsel also presented video deposition testimony from Dr. Jessica Gertz, Fajardo's treating physician in the emergency room. In the video, Dr. Gertz stated that when Fajardo arrived in the emergency room, he was conscious but "was confused and asking repetitive questions." She recalled that he told other providers that he could not remember what

happened. She testified that Fajardo's loss of consciousness and memory loss were certainly consistent with being hit by a truck.

Fajardo's medical expert, Dr. Jawad Bhatti, testified that aside from carpal tunnel surgery, knee surgery, diabetes treatment, and peripheral neuropathy, Fajardo was in good physical health prior to the accident. He testified that Fajardo's pre-accident lower back pain was attributable to his age. Dr. Bhatti testified that Fajardo sustained a subdural hematoma—a bleed on the brain—in the accident, which is a "really serious medical condition," but that Fajardo recovered well. He concluded that the accident both exacerbated Fajardo's existing lower back pain and caused him a new injury.

At the conclusion of Fajardo's evidence, Stewart testified. He explained that on the night of the accident, before leaving his parking spot in the rear parking lot, he conducted a pre-trip safety check of his truck. This included checking the truck's fluids and the tires' inflation, and ensuring that the lights, flashers, and turn signals were in operational condition. He stated that his truck was white and was furnished with reflective tape and lights on top of the cab and along the trailer. He testified that the truck had a diesel engine that was somewhat noisy. Consistent with his deposition testimony, Stewart recalled that before he pulled away, he turned on his headlights and four-way flashers "to alert people that you're actively in motion." He testified that he was moving his truck from the rear parking lot toward the fuel pumps at "idle speed," which he estimated to be "probably a little under 5 miles per hour." He testified that he never depressed the accelerator and that he "just let it idle through the parking lot." He stated that he did not see Fajardo, but heard a thud, and that he was going slowly enough that he was able to stop his truck before running over Fajardo. He testified that he got out of his truck and saw Fajardo lying on his side. Stewart explained that he ran to the service area to ask someone to call 911 because his cell phone was dead. He recalled that he then covered Fajardo with a blanket

"because it was raining." Consistent with his deposition testimony, he testified that he did not know specifically which part of his truck hit Fajardo because he did not see him, but that Fajardo was lying in front of his truck. He recalled that Fajardo was "wearing a dark shirt and dark colored pants."

On December 14, 2023, the jury returned a verdict for Fajardo, awarding him $580,000 with interest from the date of the accident. On January 2, 2024, while the matter was still within the jurisdiction of the trial court, Stewart moved to set aside the verdict. He argued that the jury's verdict should be set aside because there was no evidence that Stewart was negligent—and because there was evidence that Fajardo was contributorily negligent. Fajardo opposed the motion, arguing that he presented credible evidence supporting the jury's verdict that Stewart was negligent—and that Stewart failed to prove that Fajardo was contributorily negligent.

On June 7, 2024, the parties appeared before the trial court for a hearing on the motion to set aside the verdict. At the conclusion of the hearing, the trial judge stated that deciding the motion was "a more difficult decision that I've had so far on the bench" and that "I'm going to take some time to decide."

On July 10, 2024, the trial court granted Stewart's motion to set aside the jury's verdict. The trial court held that Fajardo "failed to sustain his burden of proof for negligence" and "Defendants [Stewart] likewise, failed to sustain their burden [of] proof as to contributory negligence of" Fajardo. The trial court stated, "Stewart's failure to see Fajardo cannot, standing alone, prove Stewart's negligence." The trial court concluded that Fajardo had not "presented sufficient evidence for a jury to infer Stewart was negligent" and that he could not recover based on "conjecture, guess or random judgment." At the conclusion of its opinion, the trial court stated, "This Court is hesitant to overturn any jury verdict and does not do so improvidently. However, this Court concludes that considering the evidence and reasonable inferences, in the

light most favorable to the Plaintiff, there is insufficient evidence to support the jury's finding of negligence."

Fajardo moved for reconsideration, which the trial court denied. In its opinion letter denying Fajardo's motion for reconsideration, the trial court stated, "The Court understood the gravity of its decision when it granted the Motion to set aside the verdict and only did so after painstaking consideration of the arguments outlined in the extensive briefs presented, as well as all the preceden[ts] cited." Fajardo now appeals to this Court.

## II. ANALYSIS

On appeal, Fajardo argues, "The circuit court erred in granting the Defendants' Motion to Set Aside the Verdict."[3]

### A. <u>Sufficiency of the Evidence</u>

A motion to set aside a jury verdict tests "whether the evidence is sufficient to support a jury verdict on the claim alleged." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 369 (2008). "The circuit court's authority to set aside a jury verdict is limited and should be exercised 'only if a jury verdict is plainly wrong or without credible evidence to support it.'" *Est. of Moses v. Sw. Va. Transit Mgmt. Co.*, 273 Va. 672, 677 (2007) (quoting *McGuire v. Hodges*, 273 Va. 199, 205 (2007)). Importantly, the Supreme Court, however, has emphasized, "Where the trial court has set aside a jury verdict, that verdict is not entitled to the same weight as a verdict which has been approved by the trial court." *Simmons v. Miller*, 261 Va. 561, 572 (2001) (quoting *O'Brien v. Everfast*, 254 Va. 326, 330 (1997)). Furthermore, "if a jury necessarily has reached its conclusions based on speculation and conjecture, the plaintiff's case fails." *Id.* In addition, the Supreme Court has stated that, "when reviewing a trial court's order setting aside a jury verdict,

---

[3] Fajardo's first through fifth and seventh assignments of error are largely duplicative, and all challenge the sufficiency of the evidence. We, therefore, address them together.

*the trial court's decision* will be sustained unless plainly wrong or without evidence to support it." *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 366 (2003) (emphasis added) (quoting *Henderson v. Gay*, 245 Va. 478, 480 (1993)).

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Al-Saray v. Furr*, 304 Va. 19, 28 (2025) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). A driver has a duty to maintain a proper lookout when operating his vehicle. *See Matthews v. Hicks*, 197 Va. 112, 115 (1955). "If the driver of a vehicle looks and does not see what a reasonably prudent person would have [s]een under the circumstances in time to take the necessary precautions to avoid danger, he is" negligent. *Id.*

In *Elliot v. Anderson*, 208 Va. 753 (1968), the Supreme Court held, "Negligence cannot be presumed from the mere happening of an accident." *Id.* at 757 (quoting *Weddle v. Draper*, 204 Va. 319, 322-23 (1963)). "It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 95 (2021) (quoting *McFadden v. Garrett*, 211 Va. 680, 683 (1971)).

The trial court did not err when it granted Stewart's motion to set aside the jury's verdict because the evidence presented to the jury—even when considered in the light most favorable to Fajardo—was simply insufficient for a jury to conclude that Stewart actually breached a duty of care. The evidence was largely uncontested. It was dark but the truck stop was well lit. It was raining. Fajardo arrived at the truck stop around 9:30 p.m. and walked into the service center to schedule a service for his truck. Stewart was familiar with the truck stop and the frequency of pedestrian traffic. Stewart's truck was white and was furnished with reflective tape. Stewart conducted a safety check prior to pulling away, and the truck's headlights, four-way flashers, and

turn signals were operational. Stewart slowly pulled away, having engaged his windshield wipers, headlights, and four-way flashers. Stewart was traveling slowly, at five miles per hour, and never depressed the accelerator. Fajardo left the building intending to take the same path back to his trailer. Fajardo looked both ways. Fajardo was 5 feet, 5 inches tall, had black hair, and was wearing dark pants and a black jacket. Stewart heard a thud, immediately stopped the truck, got out of the truck, and saw Fajardo lying on the ground in front of his truck. Stewart had the big truck moving so slowly he testified (without objection) that when he heard the thud, he was able to stop his truck before he ran over Fajardo. Stewart's cell phone was dead so he could not use it to call 911, but he ran inside the service center and asked someone to call 911.

As we noted *supra*, the Supreme Court has held that "[n]egligence cannot be presumed from the mere happening of an accident." *Elliott*, 208 Va. at 757 (quoting *Weddle*, 204 Va. at 322). Fajardo assumes that because Stewart did not see him, he therefore must have failed to keep a proper lookout. However, Fajardo's theory essentially presupposes that Stewart was negligent, when the uncontested evidence presented to the jury suggested that Stewart acted with ordinary care by conducting the pre-trip safety check, by driving so slowly that he never even pressed down on the accelerator, by moving on the rainy night only with his four-way flashers, headlights, and windshield wipers engaged, and by going no faster than five miles per hour.

On appeal, this Court is required to "accord the party who received the verdict the benefit of all substantial conflict in the evidence." *Simmons*, 261 Va. at 572 (quoting *O'Brien*, 254 Va. at 330). However, there was little to no conflict in the evidence presented, and the theories presented by Fajardo and Stewart were not mutually exclusive. It would be a very different case if, for example, Stewart testified that he was driving at five miles per hour, but Sergeant Miller's investigation revealed that he was traveling much faster. In fact, Sergeant Miller corroborated Stewart's uncontested testimony, as his "investigation revealed that it was a low speed impact."

It is entirely possible that the events unfolded exactly as both parties allege, and yet the accident still occurred. Consequently, it is entirely possible that neither party was negligent under the circumstances—and that the accident still occurred.[4]

Given that the record is devoid of affirmative evidence of Stewart's negligence—and given that the jury's verdict was necessarily therefore based on "conjecture, guess or random judgment," *Lucas*, 300 Va. at 95 (quoting *McFadden*, 211 Va. at 683), we cannot say that the trial court's decision to set aside the jury verdict was plainly wrong or without evidence to support it. *Cohn*, 266 Va. at 366.

Both parties argue on brief that the Supreme Court's recent decision in *Al-Saray v. Furr*, 304 Va. 19 (2025), decides this case in their favor. In that case, Al-Saray was seated in the rear passenger-side seat of a vehicle driven by Janaia Spurlock. *Id.* at 23. Spurlock was at an intersection, turning left on a solid green light, requiring her to yield to oncoming traffic. *Id.* at 23-24. Furr was driving in that oncoming traffic and struck the right side of Spurlock's car as she was turning, seriously injuring Al-Saray, and killing another passenger in the vehicle. *Id.* at 24. Evidence presented at trial indicated that the weather was clear and that Furr had 300-400 feet of unobstructed view. *Id.* A witness saw Spurlock's vehicle already moving in the

---

[4] For the same reason, we disagree with Fajardo's contention in his fifth assignment of error that the trial court considered the evidence in the light most favorable to Stewart. Fajardo alleges that the trial court "improperly speculated about what Mr. Fajardo might have been doing just before the accident." However, "[a]ppellate courts do 'not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" *Vay v. Commonwealth*, 67 Va. App. 236, 253 (2017) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). Assuming without deciding that the trial court improperly considered the absence of evidence of Fajardo's movements immediately prior to the collision in granting the motion to set aside the jury verdict, we conclude that any such error was harmless. It would not have affected the outcome of the case, given the sparsity of Fajardo's evidence, and given that Fajardo has simply not shown that Stewart breached his duty of care. Again, as the Supreme Court has instructed, just because Stewart's big rig truck hit Fajardo does not mean that Stewart was necessarily negligent. It was Fajardo's burden to prove Stewart's negligence, and any error in the trial court's discussion of *Fajardo's* conduct does not relieve Fajardo of that burden.

intersection, and then heard the crash. *Id.* However, Furr alleged that she did not see Spurlock's car until it entered the intersection. *Id.* There was some indication in the evidence presented that Furr needed—but was not wearing—glasses on the day of the accident. *Id.* at 24-25. Furr even misrepresented in her testimony about whether she needed to wear glasses to drive properly. *Id.* Furr moved to strike the evidence, which the trial court denied. *Id.* at 25. The jury entered a verdict for Al-Saray. *Id.* at 26.

This Court reversed the trial court, holding that Al-Saray's evidence was "insufficient to show that [Furr] was a proximate cause of the accident." *Furr v. Al-Saray*, No. 0198-22-4, slip op. at 15 (Va. Ct. App. May 16, 2023). The Supreme Court then reversed the judgment of this Court, holding that "the evidence was sufficient to support the jury's verdict in this case." *Al-Saray*, 304 Va. at 31. The Supreme Court faulted this Court for taking a "limited view of the facts," and concluded that when viewing the entire sequence of events (it was a sunny and dry day; Spurlock's vehicle was visible in the intersection; Furr had several hundred feet of unobstructed view; Furr made no effort to brake; the point of impact proved that most of Spurlock's vehicle had already passed in front of Furr's vehicle), the evidence supported the jury's determination that Furr's failure to keep a proper lookout was the proximate cause of the accident.[5]

---

[5] In *Al-Saray*, the Supreme Court faulted this Court for relying on

> cases where there was either no jury verdict because the lower court granted a motion to strike, or the lower court set aside a jury verdict because the expert witness's testimony was stricken. For obvious reasons, our standard of review in those cases differs significantly from cases such as this one, where a jury verdict has been secured in favor of one party or another.

*Al-Saray*, 304 Va. at 32 n.6 (citations omitted).
We note that the jury's verdict in *Al-Saray* was approved by the trial court and reversed by this Court. In this case, the jury's verdict was set aside by the trial court. While "a party who comes before us with a jury verdict approved by the circuit court 'occupies the most favored

- 11 -

Unlike the case in the appeal now before us, in *Al-Saray*, the sole question was whose negligence proximately caused the accident. Here, it is not clear or proven that there was *any* negligence by *either* party. In other words, where the question in *Al-Saray* was whose negligence proximately caused the collision, the question in this case is whether there was a breach at all—i.e., whether Stewart acted in a manner that actually did breach the duty of ordinary care he owed Fajardo. Importantly, furthermore, the differences in the evidence between this case and *Al-Saray* are significant, and *Al-Saray* presents the kind of affirmative evidence of negligence that the trial court found was lacking here. In *Al-Saray*, it was a sunny and dry day, Spurlock's vehicle was easily visible in the intersection, Furr had several hundred feet of unobstructed view, the point of impact proved that most of Spurlock's vehicle had already passed in front of Furr's vehicle, and there was an eyewitness. Here, Fajardo presented no comparable evidence. It was dark and rainy, and Fajardo was in dark clothing. There was no conclusive point-of-impact evidence as Stewart did not know which part of his truck hit Fajardo because he did not see him and because, unlike in *Al-Saray*, there were no third-party eyewitnesses. For all of these reasons, unlike in *Al-Saray*, the record before this Court on appeal indicates that Fajardo had not adequately borne his burden of proving at trial that Stewart breached his duty of ordinary care to Fajardo. We therefore cannot say, given the standard of

position known to the law,'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)), when "the trial court has set aside a jury verdict, that verdict is not entitled to the same weight as a verdict which has been approved by the trial court," *Simmons*, 261 Va. at 572 (quoting *O'Brien*, 254 Va. at 330). While we recognize that it is this Court's role "to uphold the sanctity of the jury verdict," *Smithey v. Sinclair Refin. Co.*, 203 Va. 142, 145 (1961), we remember that the Supreme Court has instructed that "if a jury necessarily has reached its conclusions based on speculation and conjecture, the plaintiff's case fails," *Simmons*, 261 Va. at 572 (quoting *O'Brien*, 254 Va. at 330).

review enunciated by the Supreme Court in *Cohn*, that the trial court erred in its decision to set aside the jury's verdict.[6]

## B. Motion to Reconsider

In his sixth assignment of error, Fajardo also argues, "The circuit court erred in denying the Plaintiff's Motion to Reconsider the Court's Setting Aside of the Jury's Verdict for the Plaintiff."

A circuit court's decision to deny a motion for reconsideration is reviewed for an abuse of discretion. *Primov v. Serco, Inc.*, 296 Va. 59, 70 (2018). As explained *supra*, the trial court did not err when it granted Stewart's motion to set aside the jury's verdict. Accordingly, drawing every inference in Fajardo's favor and considering the evidence in its totality, we also hold that the trial court did not abuse its discretion in denying Fajardo's motion to reconsider.

## III. CONCLUSION

For all of the foregoing reasons, we do not disturb the judgment of the trial court.

*Affirmed.*

---

[6] Given that we affirm the trial court's decision to set aside the jury verdict on the grounds that Fajardo did not bear his burden of proving that Stewart was negligent, we need not reach the question of whether the trial court erred in concluding that Stewart had not proven Fajardo's contributory negligence, to which Stewart has assigned cross-error. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Bon Secours-Depaul Med. Ctr., Inc. v. Rogakos-Russell*, 304 Va. 1, 12 (2025) (alteration in original) (quoting *Rastek Constr. & Dev. Corp. v. Gen. Land Com. Real Est. Co.*, 294 Va. 416, 423 (2017)).

We also do not address Stewart's second assignment of cross-error, in which he alleges "The trial court erred in concluding that evidence of Plaintiff's intent, upon leaving the service building, was sufficient to support an inference about Mr. Fajardo's general direction of travel at the time of the accident." In his brief, Stewart cites no legal authority to support this conclusion in this second assignment of cross-error. It is therefore waived on appeal, and we cannot reach it. *See* Rule 5A:20(e) ("With respect to each assignment of error, the standard of review and the argument—including principles of law and the authorities— must be stated"); *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention.").